EDITH H. JONES, Chief Judge:
Carol Severance filed suit against Texas Attorney General Greg Abbott, Commissioner of the Texas General Land Office Jerry Patterson, and Galveston County District Attorney Kurt Sistrunk (the “Officials”), seeking declaratory and injunctive relief to prevent them from enforcing a public easement under the Texas Open Beaches Act, Tex. Nat. Res.Code Ann. § 61.011(a) et seq. Severance contends that because the beach boundary of her property migrated landward after Hurricane Rita, taking in land not previously encumbered by a public access easement, the enforcement of the easement on her beachfront properties constitutes a seizure in violation of the Fourth Amendment and a taking without just compensation in violation of the Fifth Amendment. The dis *493 triet court dismissed the action, ruling that Severance failed to state a claim for relief because Texas law recognizes a “rolling” beachfront easement; this type of easement predated Severance’s purchase of her beachfront properties; the State may enforce the easement as natural changes occur in its location; and no constitutional violation results from an uncompensated change in the easement’s location on Severance’s property. We affirm dismissal of the takings claim and certify state law issues to the Texas Supreme court in regard to the claim of unreasonable seizure.[1]
I.
To clarify the constitutional questions this case presents, a brief sketch of Texas’s property law as it relates to the State’s coastal areas is necessary. In Luttes v. State, the Texas Supreme Court ruled for the first time that the State owned only the coastal land seaward of the mean high tide, or the “wet beach.” 159 Tex. 500, 324 S.W.2d 167, 187 (1958). One year later, the Texas legislature enacted the Open Beaches Act (“OBA”), Tex. Nat. Res.Code Ann. § 61.011(a). The OBA provides that
if the public has acquired a right of use or easement to or over an area by prescription, dedication, or has retained a right by virtue of continuous right in the public, the public shall have the free and unrestricted right of ingress and egress to the larger area extending from the line of mean low tide to the line of vegetation bordering on the Gulf of Mexico [i.e. both the “wet beach” and “dry beach”].

Id.

To enforce the OBA, various state and local officials may seek declaratory or injunctive relief, including orders to remove “any improvement, maintenance, obstruction, barrier, or other encroachment on a public beach.... ” Id. § 61.018(a). A landowner may not exclude the public from a beach covered by the OBA. Id. § 61.014(b).
Following passage of the OBA, Texas courts have found that the public has acquired easements by prescription or implied dedication or custom on the dry beach along portions of the Texas Gulf Coast. See, e.g., Seaway Co. v. Att’y Gen., 375. S.W.2d 923, 936-37 (Tex.Civ.App.—Houston 1964, writ ref'd n.r.e.); Matcha v. Mattox, 711 S.W.2d 95, 101 (Tex.Civ.App.—Austin 1986, writ denied); Feinman v. State, 717 S.W.2d 106, 113 (Tex.App.—Houston [1st Dist.] 1986, writ ref'd n.r.e.). Although the OBA is silent about the effect of erosion on the boundaries of public beachfront easements, Texas courts have also held that, once an easement is established, its boundaries shift with the vegetation line and the line of mean low tide. Feinman, 717 S.W.2d at 110-11. Under this “rolling easement doctrine,” the State is not required to establish a new easement via prescription, dedication or continuous right as the shoreline migrates landward. Id. Migration of the shoreline frequently accompanies hurricanes or tropical storms.[2]
*494 II.
Carol Severance, a California resident, purchased two beachfront properties along Bermuda Beach Drive and Kennedy Drive on West Galveston Island in April 2005. Each parcel was improved with a single-family home that Severance has used as rental properties. No easement has ever been established on either parcel via prescription, implied dedication, or continuous right. However, in 1975, the State obtained a judgment in another case that an easement existed on a strip of beach seaward of Severance’s land.
The parties disagree as to whether any part of Severance’s properties was subject to a rolling easement before Severance purchased the properties.[3] It is undisputed that after the purchase erosion caused by Hurricane Rita in September 2005 shifted the vegetation line farther landward, causing a large segment of Severance’s properties, including both homes, to be located on the dry beach. On June 7, 2006, a temporary moratorium on the removal of houses located on the public beach expired, and the Commissioner informed Severance that her houses were subject to a removal order at any time. The State offered Severance approximately $40,000 assistance to relocate or remove the two houses. She refused the offer.
Severance promptly filed this suit for declaratory and injunctive relief against the Officials. She alleged that enforcement of the rolling easement pursuant to the OBA would effect an illegal seizure under the Fourth Amendment and an impermissible taking without just compensation under the Fifth Amendment. She also alleged that the enforcement would violate her substantive due process rights. The State moved to dismiss under Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6), arguing that her constitutional challenges were barred on jurisdictional grounds, including sovereign immunity and ripeness, and were in any event meritless.
After determining that the Officials were not immune from suit, the district court drew a distinction between Severance’s challenges to (a) the Officials’ ability to bring a future action to have her homes removed under the OBA and (b) the imposition of the rolling easement in general, which prevents Severance from excluding others on the dry beach portion of her properties. The district court dismissed both challenges, finding the house removal claims not ripe and the rolling easement claims “arguably ripe” but deficient on the merits. As was noted at the outset, the district court held that Severance could not assert a claim for violation of state or constitutional law arising from the State’s enforcement of a rolling public beachfront access easement on her properties.
Severance timely filed this appeal. She has abandoned her substantive due process challenge, and does not contest the dismissal of her house removal claims.[4] On appeal, she asserts that, as applied to her properties, the migration of the rolling easement without a finding of prescription, dedication or custom, and without compen *495 sation, effects an unconstitutional taking and seizure.
III.
Before reaching Severance’s arguments on the merits, we must consider the Officials’ contention that her suit is barred on jurisdictional grounds. The Officials maintain that sovereign immunity precludes the suit, that Severance lacks standing to pursue her claims, and that her claims are unripe. We review the issue of Eleventh Amendment immunity, like other jurisdictional issues, de novo. United States ex rel. Barron v. Deloitte & Touche, 381 F.3d 438, 439 (5th Cir.2004).

A. Sovereign Immunity

The Officials contend that Eleventh Amendment sovereign immunity bars Severance’s suit. The district court disagreed, holding that the suit fit within Ex Parte Young, which allows suits against state officials for prospective relief. See 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908).
The Officials do not dispute that Severance is seeking prospective equitable relief. Rather, relying on the Supreme Court’s decision in Coeur d’Alene and this court’s decision in Mauro, they argue that the Ex Parte Young exception is inapplicable. See Idaho v. Coeur d’Alene, 521 U.S. 261, 117 S.Ct. 2028, 138 L.Ed.2d 438 (1997); John G. & Marie Stella Kenedy Mem’l Found. v. Mauro, 21 F.3d 667 (5th Cir.1994). In Coeur d’Alene, the Supreme Court held that an Indian Tribe’s suit was barred by the Eleventh Amendment because the Tribe’s claims were the “functional equivalent of quiet title in that substantially all benefits of ownership and control would shift from the State to the Tribe” should the Tribe prevail. 521 U.S. at 282, 117 S.Ct. at 2040. The Court held that “[ujnder these particular and special circumstances,” the Ex Parte Young exception to Eleventh Amendment sovereign immunity did not apply. Id. at 287, 117 S.Ct. at 2042-43. Mauro likewise arose from a quiet title action in which the parties disputed ownership of the property. 21 F.3d at 671-72.
In contrast to Coeur d’Alene and Mauro, Severance’s suit is not the functional equivalent of a quiet-title action: Title to the properties at issue rests with Severance, not the State. The Officials do not claim title, nor could they under the OBA. See Tex. Nat. Res.Code Ann. § 61.023 (OBA “shall not be construed as affecting in any way the title of the owners of land adjacent to any state-owned beach bordering on the seaward shore of the Gulf of Mexico”). The issue is whether the State may constitutionally impose an easement, or an encumbrance, on her fee simple estate. Thus, the “particular and special circumstances” of Coeur d’Alene and Mauro are not present in this case. See Coeur d’Alene, 521 U.S. at 287, 117 S.Ct. at 2042-43. Ex Parte Young applies, and Severance’s suit is not barred by sovereign immunity.

B. Standing

The Officials contend that Severance lacks standing because any taking or seizure took place before she acquired the properties at issue. The Officials assert, and Severance disputes, that the easement attached to her properties no later than 1999, well before she bought them.
In the case of an alleged physical taking, like this one,[5] “any award goes to *496 the owner at the time of the taking, and [ ] the right to compensation is not passed to a subsequent purchaser.” Palazzolo v. Rhode Island, 533 U.S.. 606, 628, 121 S.Ct. 2448, 2463, 150 L.Ed.2d 592 (2001). However, even if the easement had attached to some portion of Severance’s properties before the purchase, the vegetation line shifted farther inland after the purchase. Because the State seeks to impose an easement on a different (and larger) segment of her properties than was covered at the time of her purchase, Severance has suffered an injury distinct from that of the previous owner.
In arguing otherwise, the Officials contend that a property owner suffers but a single injury at the time the easement initially rolls onto the property. Under this logic, if a state informs a property owner that it has imposed an easement on a particular parcel of land, and the owner then transfers the property to a new owner, the state could assert an easement on different and larger portions of the parcel without effecting a new constitutional injury. The Officials offer no support for this proposition. Indeed, a physical occupation of a property may constitute a taking despite an alleged preexisting easement of a smaller scope. See, e.g., Owen v. United States, 851 F.2d 1404, 1415 (Fed.Cir.1988). We, therefore, reject the Officials’ argument that Severance lacks standing.

C. Ripeness

The Officials contend that Severance’s claims are premature. As explained, Severance brings two separate constitutional challenges: a Fifth Amendment takings claim and a Fourth Amendment seizure claim. Because distinct ripeness inquiries apply to these claims, we address each in turn. Ripeness is a question of law, which we review de novo. Urban Developers LLC v. City of Jackson, 468 F.3d 281, 292 (5th Cir.2006).

1. Ripeness of Takings Claims

The district court relied exclusively on the traditional case-and-controversy analysis in determining whether Severance’s claims are ripe. The Supreme Court, however, has adopted a special, two-prong test for evaluating ripeness under the Takings Clause. See Williamson County Reg’l Planning Comm’n v. Hamilton Bank, 473 U.S. 172, 186, 194, 105 S.Ct. 3108, 3116, 3120-21, 87 L.Ed.2d 126 (1985). A takings claim is not ripe until (1) the relevant governmental unit has reached a final decision as to how the regulation will be applied to the landowner, and (2) the plaintiff has sought compensation for the alleged taking through whatever adequate procedures the state provides. Id. At issue here is only the second prong, the adequacy of the state procedures to compensate landowners for their property taken by the government.
The Officials contend that Severance’s takings claims are not ripe under the state procedures prong because Severance failed to seek just compensation in state court. Severance counters with several arguments. She first asserts that Williamson County’s state procedures rule is inapplicable to her suit because this case involves a physical taking, whereas Williamson County involved a regulatory taking, and because she seeks injunctive rather than compensatory relief. Neither distinction renders Williamson County inapplicable.
*497 Severance’s argument that the state procedures rule does not apply to a physical takings claim is foreclosed in this circuit. In Urban Developers LLC v. City of Jackson, this court applied the Williamson County ripeness inquiry to an “ordinary,” “non-regulatory” physical takings claim, and found the claim unripe under the test’s second prong. 468 F.3d at 294-95;. accord Peters v. Village of Clifton, 498 F.3d 727, 733 (7th Cir.2007) (applying Williamson County’s second prong to a physical .takings claim); Pascoag Reservoir & Dam, LLC v. Rhode Island, 337 F.3d 87, 91 (1st Cir.2003) (same); Daniel v. County of Santa Barbara, 288 F.3d 375, 382 (9th Cir.2002) (same); Arnett v. Myers, 281 F.3d 552, 563 (6th Cir.2002) (same).
Severance also contends that Williamson County’s state procedure rule is inapplicable because she seeks only injunctive and declaratory relief, whereas the claimant in Williamson County sought compensatory damages. Severance does not explain why this distinction should be of consequence, nor does she cite any authority to support her position. Several other circuits have held to the contrary by applying Williamson County to claims seeking injunctive or declaratory relief. See Peters, 498 F.3d at 730; von Kerssenbrock-Praschma v. Saunders, 121 F.3d 373, 379 (8th Cir.1997); Daniel, 288 F.3d at 384-85; Bickerstaff Clay Prods. Co. v. Harris County, 89 F.3d 1481, 1490 (11th Cir.1996). Moreover, in crafting the state procedures requirement in. Williamson County, the Supreme Court relied on Ruckelshaus v. Monsanto Co., 467 U.S. 986, 1018 n. 21, 104 S.Ct. 2862, 2881 n. 21, 81 L.Ed.2d 815 (1984), a case in which the plaintiff sought only injunctive and declaratory relief. We must reject her proffered distinction.
Severance next asserts that even if Williamson County’s state procedures requirement applies to all takings claims, the requirement is satisfied here. Under Williamson County, a property owner need not avail himself of state procedures before pursuing a takings claim in federal court if he can demonstrate that the state’s procedures for seeking compensation are “unavailable or inadequate.” 473 U.S. at 197,105 S.Ct. at 3122.
Severance maintains that Williamson County should be construed only to require pursuit of administrative compensation procedures, not state-court litigation. Because neither the OBA nor any administrative rule prescribes an administrative procedure for seeking compensation from the state, Severance contends that state procedures are unavailable and her claims are ripe. This argument is irreconcilable with Williamson County itself, which held a takings claim “premature” because the parties failed to use Tennessee’s judicial inverse condemnation procedure. It is also at odds with multiple decisions of this court that found takings claims unripe when the claimant failed to seek compensation in state courts before filing a federal claim. See, e.g., Urban Developers, 468 F.3d at 295; Bryan v. City of Madison, 213 F.3d 267, 276 n. 16 (5th Cir.2000).
Nonetheless, Severance asserts that requiring her first to litigate in state court would, through the principles of res judicata, claim and issue preclusion, effectively bar her from ever litigating her takings claim in federal court. We are not blind to this potential effect. See San Remo Hotel, L.P. v. City & County of San Francisco, 545 U.S. 323, 351, 125 S.Ct. 2491, 2509, 162 L.Ed.2d 315 (2005) (Rehnquist, C.J., concurring) (stating that the court should reconsider the state-litigation requirement, as ‘Williamson County all but guarantees that claimants will be unable to utilize the federal courts to enforce the Fifth Amendment’s just compensation guarantee”). However, a majority of the Supreme Court *498 in San Remo were unconcerned by this result, observing that “[i]t is hardly a radical notion to recognize that, as a practical matter, a significant number of plaintiffs will necessarily litigate their federal takings claims in state courts.” Id. at 346, 125 S.Ct. at 2506. The Court explained that “[s]tate courts are fully competent to adjudicate constitutional challenges to local land-use decisions,” and “[ijndeed, state courts undoubtedly have more experience than federal courts do in resolving the complex factual, technical, arid legal questions” implicated by property regulation. Id. at 347, 125 S.Ct. at 2507. Thus, unless the Supreme Court overrules the state procedures requirement, we are bound to give effect to it.
Severance next argues that Texas’s procedures are inadequate because state courts would undoubtedly deny compensation if she were to seek it. The Officials counter that the inadequacy exception to the state procedures rule applies only when a state court claim does not exist at all, ie., there is no state court vehicle for asserting the relevant claim, not when the plaintiff believes an available procedure will be' unsuccessful. Some circuits subscribe to the state’s construction,[6] but this court has adopted a less restrictive definition of “inadequate.” In Samaad v. City of Dallas, we found merit in Williamson County’s “implicit conclusion that the mere existence of some compensation mechanism does not necessarily render those procedures adequate.” 940 F.2d 925, 934 (5th Cir.1991). Rather, “inadequate procedures are those that almost certainly will not justly compensate the claimant.” Id. (internal quotation marks omitted). Our cases have therefore examined state law to determine whether available courts “unquestionably would afford [the plaintiff] no remedy.” Id. at 935; see also Rolf v. City of San Antonio, 77 F.3d 823, 827 (5th Cir.1996).[7]
Turning to that inquiry, Severance, who bears the burden of proof, asserts that Texas courts have uniformly held that no taking results when state officials conclude that an OBA beach access easement has rolled over private property. But the Texas Supreme Court has not yet addressed whether imposition of the rolling easement is consistent with state law or whether compensation must be awarded when the easement moves onto previously unencumbered property. Indeed, the state Supreme Court appears to have avoided ruling on these issues whose resolution is vital to the rights of thousands of Texas beachfront property owners.
While three intermediate appellate courts have upheld the imposition of a rolling easement and concluded that it does not effect a taking, the decisions offered little to no analysis of the takings issue. See Arrington v. Mattox, 767 S.W.2d 957, 958-59 (Tex. App.— Austin 1989); Matcha v. Mattox, 711 S.W.2d 95, *499 101 (Tex.App.—Austin 1986); Moody v. White, 593 S.W.2d 372, 379-80 (Tex.Civ. App.—Corpus Christi 1979).[8] In addition, two assumptions on which these courts found no taking are open to debate. One assumption of these courts is that the “rolling easement doctrine” inheres in longstanding principles of Texas common law and is not a construction of the OBA. See Arrington, 767 S.W.2d at 958; Matcha, 711 S.W.2d at 101. In the seminal case establishing that easements shift as the natural shoreline shifts, the court stated that “[c]ourts have upheld the concept of a rolling easement along rivers and the sea for many years,” suggesting it was deciding whether the rolling easement was a product of common law. Feinman, 717 S.W.2d at 110-11. Feinman, however, ultimately characterized the rolling easement as “implicit in the Act.” Id. at 111. Whether the public’s beach access easement arises by virtue of common law and under what theory — prescription, implied dedication, custom or the OBA itself — is a critical component of takings analysis, yet the state courts’ decisions are utterly inconsistent.[9]
The second arguable assumption is that the rolling easement may obliterate the landowner’s improvements, e.g., by requiring removal of entire houses that when built were on the landward side of the vegetation line. The Seaway case, which first carefully construed the OBA’s reach in regard to Galveston’s West Beach, held only that a public easement had existed over the dry beach by implied dedication or prescription. In so holding, the court noted more than once that the beach’s tide and vegetation boundaries had remained essentially stable for two hundred years or *500 more, the stability interrupted only by occasional, temporary changes caused by storms. Seaway, 375 S.W.2d at 931. See also Moody, 593 S.W.2d at 379 (citing Seaway to support the proposition that “there is considerable testimony in the record which establishes the stability of the beach in question”). Seaway, in fact, declined to consider the constitutionality of the OBA precisely because the state’s easement in that case was proved with findings, inter alia, that a “beach” “had remained in substantially the same geographical position since the time of the Jones [and] Hall grant”; that the “mean high water line has not advanced landward since July 31, 1931”; that “since November 28, 1840[,] there has been no landward advance of the mean high tide in the area used as a public way”; and “[t]here has been no net erosion along the shore of the Gulf of Mexico.” Seaway, 375 S.W.2d at 927.
Given the uncertainty and ambiguity of Texas law concerning rolling easements and the takings consequences thereof, the Texas Supreme Court might award relief under the facts Severance has alleged. See Rolf, 77 F.3d at 827 (dismissing a takings claim as unripe where the Texas Supreme Court had not yet addressed the plaintiffs exact claim). Because we cannot say with certainty that Severance would be denied compensation if she were to bring her claims in state court, her takings claim is premature in this court.[10]

2. Ripeness of Seizure Claim

Unlike her takings claim, Severance’s Fourth Amendment seizure claim, which is not governed by the Williamson County framework, is ripe. See Abbott Laboratories v. Gardner, 387 U.S. 136, 149-55, 87 S.Ct. 1507, 1515-18, 18 L.Ed.2d 681 (1967) (outlining as relevant factors (1) whether the issues are purely legal; (2) whether the issues are based on final agency action; (3) whether the controversy has a direct and immediate impact on the plaintiff; and (4) whether the litigation will expedite, rather than delay or impede, effective enforcement by the agency).
The Officials do not contest that these factors all support finding Severance’s seizure claim ripe. The issues are purely legal. The district court determined that Severance’s claims turn on whether the rolling easement doctrine is an aspect of Texas common law or a creature of the OBA. Further factual development is unnecessary. Second, the Officials have adopted the final agency position that the landward movement of the vegetation line onto Severance’s property burdens that property with a public access easement, without proof of the elements of common law prescription, dedication, or customary right on the new area and without any provision of just compensation. Third, the controversy has a direct and immediate impact on Severance. The Officials’ enforcement of a public easement *501 prevents her from lawfully excluding the public from her land, Tex. Nat. Res.Code Ann. § 61.014(b), and subjects her to stiff financial penalties if she violates these restrictions, Tex. Nat. Res.Code Ann. § 61.018(c). Fourth, resolving the issue now would facilitate OBA enforcement and eliminate uncertainty as to the constitutionality of the rolling easement doctrine for numerous Texas landowners. Accordingly, the district court erred in holding that this claim is merely “arguably ripe.”
IV.
Because we reject the Officials’ justiciability attacks on Severance’s seizure claim, we must consider whether the district coui’t properly dismissed this claim under Rule 12(b)(6). The grant of a motion to dismiss under Rule 12(b)(6) is reviewed de novo. Kennedy v. Chase Manhattan Bank USA NA 369 F.3d 833, 839 (5th Cir.2004). We construe the complaint in the light most favorable to the plaintiff and draw all reasonable inferences in the plaintiffs favor. See Lovick v. Ritemoney Ltd., 378 F.3d 433, 437 (5th Cir.2004). To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead “enough facts to state a claim to relief that is plausible on its face.” Bell Atl. Corp. v. Twombly, 550 U.S. 544, 127 S.Ct. 1955, 1974, 167 L.Ed.2d 929 (2007).
The Fourth Amendment, made applicable to the States by the Fourteenth Amendment, Ker v. California, 374 U.S. 23, 30, 83 S.Ct. 1623, 1628, 10 L.Ed.2d 726 (1963), provides in relevant part that the “right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated.... ” A “seizure” of property occurs when “there is some meaningful interference with an individual’s possessory interests in that property.” United States v. Jacobsen, 466 U.S. 109, 113, 104 S.Ct. 1652, 80 L.Ed.2d 85, (1984); Soldal v. Cook County, 506 U.S. 56, 61, 113 S.Ct. 538, 543, 121 L.Ed.2d 450 (1992).
The Officials preliminarily contend that any Fourth Amendment claim here is fully subsumed by Severance’s takings claim and is therefore not separately cognizable. We reject this contention. The Fourth Amendment applies to civil as well as criminal seizures, Freeman v. City of Dallas, 242 F.3d 642, 647 n. 5 (5th Cir.2001) (en banc), and the Supreme Court holds that an interference with individual property rights may be found to breach more than one provision of the Constitution. United States v. James Daniel Good Real Property, 510 U.S. 43, 49-50, 114 S.Ct. 492, 499, 126 L.Ed.2d 490 (1993). The Court has not specifically ruled that separate claims for constitutionally unreasonable seizure and taking of property may coexist, but the Fourth Circuit has so held. Presley v. City of Charlottesville, 464 F.3d 480, 487 (4th Cir.2006). Further, this court has ruled more than once that substantive due process, procedural due process, equal protection and takings claims may be implicated simultaneously in various types of governmental actions that interfere with individual property rights. Simi Inv. Co. v. Harris County, 236 F.3d 240, 248-49 (5th Cir.2000); John Corp. v. City of Houston, 214 F.3d 573, 584-85 (5th Cir.2000). This court cautioned that substantive due process is not the “appropriate avenue of relief’ for most landowner complaints, and that, with rare exceptions, takings clause “jurisprudence cannot be circumvented by artful pleading of substantive due process claims.” Simi Inv. Co. v. Harris County, 256 F.3d 323 (5th Cir.2001) (per curiam), denying reh’g to 236 F.3d 240 (5th Cir.2000). The reason for such expressed caution must be that a specific constitutional protection ought *502 generally to control over claims made under the rubric of substantive due process. The Fourth and Fifth Amendments, however, both provide specific constitutional commands. That they may have evolved through caselaw to overlap in providing remedies for some deprivations of property interests does not authorize this court to fail to apply one or the other provision. Indeed, as Presley noted, the elements of a violation of the two amendments differ, with the touchstone of a takings claim being lack of just compensation and that of a seizure claim being its unreasonableness. 464 F.3d at 485. Further, § 1983 authorizes different damage measures for the claims.
This is not to say that, as the Officials fear, “every ordinary taking of property for public use is to be hereafter actionable as a seizure.” In the ordinary case, public authorities condemn private property according to fixed rules and regulations; the process that occurs and the compensation paid could hardly be challenged as “unreasonable.” See Freeman, 242 F.3d at 654 (finding no unreasonable seizure where private property was properly condemned and demolished under local police power). Nor would many regulatory takings implicate the Fourth Amendment, for, as Presley notes, they may not involve sufficient interference with possessory interests to constitute a seizure. 464 F.3d at 485 (citing Lucas v. S.C. Coastal Comm., 505 U.S. 1003, 1014, 112 S.Ct. 2886, 2892-93, 120 L.Ed.2d 798 (1992)).
Here, however, Severance sufficiently asserts the elements of a Fourth Amendment claim, i.e., (a) a meaningful interference with her possessory interests in her property, which is (b) unreasonable because the interference is unjustified by state law or, if justified, then uncompensated. See Presley, 464 F.3d at 487-88. The State asserts the appropriation of an easement over beachfront land not previously so encumbered, and the consequence of the easement, according to the State, is that Severance may neither repair her damaged houses nor rebuild on that segment of her property nor exclude the public from using the new dry beach even though they were previously excluded. Not only has the State thus appropriated an easement over her property, but it denies owing any compensation. These facts state a potential claim under the Fourth as well as Fifth Amendments.
Unfortunately, for reasons noted above, a clearcut resolution of the respective property rights of Severance and the State is impossible. Texas caselaw fails to afford a consistent rationale for the creation or sustaining of a rolling beachfront easement. Various authorities cited by lower Texas courts in support of a common law “background principle” involve accretion and avulsion occurring at the boundaries of real property and do not address whether an easement’s boundaries may change automatically with changes to the shoreline.[11] Moreover, there are obvious conceptual difficulties in concluding that an easement is established by implied dedication or prescription, for example, over areas on which the public has never set foot. Consequently, it is conceivable that a definitive state court ruling could result in any of several possibilities. The Texas Supreme Court might conclude that (a) no rolling easement is recognized by Texas law; (b) a rolling easement cannot be allowed to dis *503 place structures that a landowner placed on the property before the boundary shifted; (c) any significant shift in the rolling easement’s boundary due to a natural shoreline movement must be accompanied by compensation of the landowner; or (d) Texas recognizes a rolling easement and its enforcement as provided in the OBA, but no landowner compensation is required.[12] Whether a “reasonable” seizure has been accomplished by the Officials here depends on a definitive construction of Texas law as to which there is no state Supreme Court precedent, much less controlling precedent. Consequently, the prudent course is for this court to certify to the Texas Supreme Court the important and determinative, but unresolved, questions of Texas law that underlie resolution of the seizure claim in this case.[13]
CERTIFICATION FROM THE UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT TO THE SUPREME COURT OF TEXAS, PURSUANT TO ARTICLE 5, SECTION 3-C OF THE TEXAS CONSTITUTION AND RULE 58 OF THE TEXAS RULES OF APPELLATE PROCEDURE. TO THE SUPREME COURT OF TEXAS AND THE HONORABLE JUSTICES THEREOF:
STYLE OF THE CASE
The style of the case in which certification is made is Severance v. Patterson, No. 07-20409, in the United States Court of Appeals for the Fifth Circuit, on appeal from the United States District Court for the Southern District of Texas. Federal jurisdiction is based on violation of federal constitutional rights. The Fifth Circuit, on its own motion, has decided to certify these questions to the Justices of the Supreme Court of Texas.
STATEMENT OF CASE
The preceding discussion in this opinion articulates the facts relevant to the questions certified.
LEGAL ISSUES
' The preceding discussion of Texas authorities and the Texas Open Beaches Act, Tex. Nat. Res.Code Ann. § 61.011(a) et seq., (“OBA”), explains that there is no controlling Texas Supreme Court authority for the certified questions and no consistent rationale for lower courts’ decisions on these questions.
QUESTIONS CERTIFIED
We certify the following questions, which are essential to determining the constitutional reasonableness of the seizure of a rolling easement over portions of Severance’s beachfront properties, to the Supreme Court of Texas:
*504 1: Does Texas recognize a “rolling” public beachfront access easement, 1. e., an easement in favor of the public that allows access to and use of the beaches on the Gulf of Mexico, the boundary of which easement migrates solely according to naturally caused changes in the location of the vegetation line, without proof of prescription, dedication or customary rights in the property so occupied?
2. If Texas recognizes such an easement, is it derived from common law doctrines or from a construction of-the OBA?
3. To what extent, if any, would a landowner be entitled to receive compensation (other than the amount already offered for removal of the houses) under Texas’s law or Constitution for the limitations on use of her property effected by the landward migration of a rolling- easement onto property on which no public easement has been found by dedication, prescription, or custom?
We disclaim any intention or desire that the Supreme Court of Texas confine its reply to the precise form or scope of the questions certified.
V.
For the foregoing reasons, we conclude that Severance’s takings claim is premature and was properly dismissed by the district court, but the propriety of the dismissal of her seizure claim depends on the state law basis for the seizure, implicating issues that we must certify to the Texas Supreme Court.
AFFIRMED IN PART, QUESTIONS CERTIFIED IN PART.

. Notwithstanding the hyperbolic and unsupported assertions in Part I of the dissent ("Context”), the judges of the court endeavor not to decide appeals based on who the litigants are, who their lawyers are, or what we may believe their motives to be. Whether that rule is observed in light of Part I of the dissent, however, the reader must determine.

. In 1985, the legislature amended the OBA to require disclosures to potential beachfront property owners of the presence of a public access easement over the public beach and the ensuing OBA consequences. Act 1985, 69th Leg., Ch. 350, § 1 eff. August 26, 1985. The Officials do not contend that the disclosures alone affected Severance’s rights but *494 only that they provided notice of the State's position under the OBA.

. The Officials assert that both of Severance's properties were on an official list, published in 1999, including over 100 homes that were "seaward of the vegetation line” and hence "on the public beach easement.” Further, Severance received a notice when she purchased the properties warning that structures existing seaward of the vegetation line are subject to OBA removal lawsuits by the State of Texas.

. To the extent that Severance brought a generalized "facial” challenge in the district court, she has abandoned that challenge on appeal as well.

. The parties agree that if the imposition of the easement effectuates a taking, it is a physical taking. See Nollan v. Cal. Coastal Comm’n, 483 U.S. 825, 832, 107 S.Ct. 3141, *496 3146, 97 L.Ed.2d 677 (1987); Kaiser Aetna v. United States, 444 U.S. 164, 179-80, 100 S.Ct. 383, 393, 62 L.Ed.2d 332 (1979).

. See Holliday Amusement Co. of Charleston, Inc. v. South Carolina, 493 F.3d 404, 408 (4th Cir.2007); Rockstead v. City of Crystal Lake, 486 F.3d 963, 965-66 (7th Cir.2007); SGB Fin. Servs., Inc. v. Consol. City of Indianapolis-Marion County, 235 F.3d 1036, 1039 (7th Cir.2000).

. Other courts have indicated that state procedures, though "available,” may be inadequate if the plaintiff is certain to lose in state court. See Littlefield v. City of Afton, 785 F.2d 596, 609 (8th Cir.1986) (overruled on other grounds) ("Until the Minnesota courts have ruled that an inverse condemnation action may not be brought or denies damages in such an action, appellants’ claim of taking without just compensation is not ripe for decision by a federal court.” (emphasis added)); Schnuck v. City of Santa Monica, 935 F.2d 171, 174 (9th Cir.1991) (examining whether state courts had made clear that they would reject any taking claim based on the rent control law the plaintiff challenged).

. Moody held, incorrectly, that the takings issue raised by the landowners was "resolved” in Seaway, 375 S.W.2d 923 (Tex.Civ. App.—Houston 1964, writ refd n.r.e.) evidently because the Texas Supreme Court denied review “n.r.e.,” i.e., "no reversible error.” The "n.r.e.” designation, however, bespoke no comment on the merits by the state supreme court at that time. Commercial Standard Ins. Co. v. Marin, 488 S.W.2d 861, 864 (Tex.Civ.App.—San Antonio 1972, writ ref'd n.r.e.) (cited with approval in Ulico Cas. Co. v. Allied Pilots Ass’n., 262 S.W.3d 773, 781 n. 3 (Tex.2008)). Matcha, alone among Texas courts, adopted the common law doctrine of "custom” to support public beach access and a rolling easement, and then declared conclusionally that its novel doctrine eliminated any takings issue. Arrington relied on Matcha, but also erroneously cited Feinman (in which the takings issue was waived), and Seaway (which did not involve a rolling easement and is otherwise distinguishable). These decisions furnish no compelling explanation why, when a rolling easement claims land that was behind the vegetation line before a storm and therefore subject to the landowners’ right to exclude the public, the shifted boundary has not been "taken” and the government is not required to pay just compensation. Indubitably, no “fixed” background principles of state law are articulated, only mutually inconsistent post hoc rationales. The state Supreme Court must sort out the confusion. See generally Neal E. Pirkle, Note, Maintaining Public Access to Texas Coastal Beaches: The Past and The Future, 46 Baylor L.Rev. 1093 (1994).

. Because of certain systemic flaws, it is hard to respond to the dissent, which asserts that Texas law is utterly clear. For instance, the dissent does not deign to interpret the OBA's language; to respond to this opinion's analysis of lower Texas cases; to note the law review articles that have discussed the OBA; or to engage in a historical survey of Texas land title law to support its position. See, e.g., Luttes v. State, 159 Tex. 500, 324 S.W.2d 167 (1958) (analyzing ownership of Texas beach land based on Spanish land grants). Moreover, it is not even clear that the dissent has read the majority opinion, which does not "declare that with each shift of the vegetation line, a new easement is born.” That is an issue the Texas Supreme Court must address. Nor does this opinion hold that Severance's claim "will ripen in the future.” That depends on what Texas courts do in this or other cases.

. It is possible, as the dissent assumes, that the easement, once it attaches to private property, automatically creates or destroys a right of public access as the vegetation line shifts landward or seaward, respectively. It is also possible that the language of the Open Beaches Act means no more than what it says: The public only obtains a right to ingress and egress on land between the mean low tide and the vegetation line “if the public has acquired a right of use or easement to or over an area by prescription, dedication, or has retained a right by virtue of continuous right in the public.” Tex. Nat. Res.Code § 61.011(a). Absent prescription, dedication or continuous right, the public does not automatically have a "right of ingress and egress to the larger area extending from the mean low tide to the line of vegetation.” Id. The dissent’s insistence that this potential scheme is cumbersome does not change the statute’s meaning, nor does it clarify the ambiguity in Texas caselaw.

. See, e.g., Feinman, 717 S.W.2d at 110 (citing Barney v. City of Keokuk, 94 U.S. 324, 339-40, 24 L.Ed. 224 (1876); Luttes v. State, 159 Tex. 500, 324 S.W.2d 167 (1958); County of Hawaii v. Sotomura, 55 Haw. 176, 517 P.2d 57, 61 (1973); Horgan v. Town Council, 32 R.I. 528, 80 A. 271 (1911); City of Chicago v. Ward, 169 Ill. 392, 48 N.E. 927 (1897); Godfrey v. City of Alton, 12 Ill. 29, 36 (1850)).

. In Coastal Indust. Water Auth. v. York, 532 S.W.2d 949 (Tex.1976), the Supreme Court's analysis of questions involving subsidence and submergence of property along a non-tidally-influenced part of the Houston Ship Channel cited with apparent approval cases holding that title does not pass by avulsion, i.e., sudden deposits or removals of land along a water boundary. Id. at 952. Nor is there a different rule depending on whether artificial or natural causes produced the change. Id. See generally Dinkins, Texas Seashore Boundary Law: The Effect of Natural and Artificial Modifications, 10 Hous. L.Rev. 43 (1972). York furnishes hints but no real guidance on the issues before us.

. The dissent's discussion of reasonableness is premature. The reasonableness of the interference with Severance's possessory interest must be analyzed in light of Texas law, as the state courts ultimately construe it. While accusing the majority of rushing to allow the Fourth Amendment claim to proceed, the dissent rushes to judgment on the merits, without waiting for clarification of the relevant law.