# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

June 22, 2018

Lyle W. Cayce
Clerk

No. 17-30692

LOURDES T. ARCHBOLD-GARRETT, wife of/ and; DAVID L. GARRETT,

Plaintiffs-Appellants

v.

NEW ORLEANS CITY; METRO DURR GROUP,

Defendants-Appellees

Appeal from the United States District Court
for the Eastern District of Louisiana

Before KING, JONES, and GRAVES, Circuit Judges.

EDITH H. JONES, Circuit Judge:

Without prior notice, the City of New Orleans demolished a building along the IH-10 service road that plaintiffs had recently purchased at a tax sale. Yet two days before the demolition, the City actually cancelled the Code Enforcement lien on the property, which it obtained after sending notices only to the owner from 18 years earlier. When the Garretts objected to the demolition, the City added insult to injury by sending them a bill for the costs. Unsurprisingly, they filed suit. The question before this court is whether their lawsuit survives the City's motion to dismiss for lack of jurisdiction. Fed. R. Civ. P. 12(b)(1). We hold it does. We **VACATE** the district court's judgment and **REMAND** for further proceedings consistent with this opinion.

No. 17-30692

## BACKGROUND

The Garretts' Section 1983 complaint alleged violations of the Takings Clause of the Fifth Amendment, the Fourth Amendment, and the Fourteenth Amendment Due Process Clause.

The property at issue is a parcel of land and a townhome that used to stand off of I-10 in New Orleans. The City had owned the property since 1998 after its previous owner, Charles Jett, neglected to pay his taxes. The City's ownership was recorded with the City Conveyance Office shortly thereafter. Notwithstanding its ownership, the City instituted housing Code Enforcement proceedings against Jett in 2012.

The Appellants purchased the property from the City on October 2, 2015, and recorded the conveyance on October 14. They aver that the building on the property was structurally sound, and the purchase documents contain no warnings of defects (though the document makes no positive statement about the buildings and improvements either).

Heedless of the sale to Appellants, or of its original tax sale purchase, the City continued to pursue Jett for alleged code enforcement deficiencies. An administrative judgment was entered against Jett on October 30, ordering him to pay over $12,000 in fines and warning that the building could be demolished in the future. A judgment lien was recorded on the property on December 7, 2015. The Appellants were not named in the judgment or lien, and they received no notice from the City about the judgment or lien. All proceedings were against Jett, the pre-1998 owner.

On January 15, 2016, the Appellants' realtor noticed a sign advising upcoming demolition of the property. When the realtor informed them of the sign, they contacted the City. After some back-and-forth with the Code Enforcement department, Appellants persuaded the City to cancel the lien

No. 17-30692

against the property. The e-mail exchanges indicated that Appellants intended to develop the property and resolve all code enforcement issues. The lien was cancelled on January 25, 2016.

Two days later, despite having cancelled the enforcement lien, the City demolished the townhouse on the Appellants' property. The Appellants had no warning.

Appellants' counsel sent the City a letter on April 14 requesting compensation for the wrongful demolition. The City responded on April 19 with a bill exceeding $11,000 for the demolition costs. The bill informed the Appellants of their "right to appeal the accuracy and reasonableness of these costs by appearing at a hearing." Plaintiffs did not appeal.

The Appellants filed this civil rights case in federal court on October 28, 2016, alleging denial of due process and just compensation under the Fourth, Fifth, and Fourteenth Amendments. The City moved to dismiss Appellants' complaint for lack of subject matter jurisdiction because their claims were unripe. The district court agreed that the Appellants' takings claim was jurisdictionally unripe because they failed to seek compensation in state court. The district court reasoned that the Appellants' failure to seek compensation in state court also meant that their intertwined procedural due process and Fourth Amendment claims were unripe. Following dismissal of their suit, the Appellants timely appealed.

**STANDARD OF REVIEW**

This court reviews motions to dismiss for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) *de novo*. *See Moran v. Kingdom of Saudi Arabia*, 27 F.3d 169, 171 (1994).

3

No. 17-30692

**DISCUSSION**

Ripeness doctrine enforces the Constitution's limit of federal court jurisdiction to "cases or controversies" by preventing premature litigation. "[A] claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." *Texas v. United States*, 523 U.S. 296, 300, 118 S. Ct. 1257, 1259 (1998) (quoting *Thomas v. Union Carbide Agric. Prods. Co.*, 473 U.S. 568, 580-81, 105 S. Ct. 3325, 3333 (1985)). The district court here determined that the Appellants' takings claim was not ripe because they did not file an inverse condemnation action in state court under Louisiana law, as required by *Williamson County Regional Planning Commission v. Hamilton Bank of Johnson City*, 473 U.S. 172, 105 S. Ct. 3108 (1985). The court reasoned that, without first seeking compensation, the Appellants had not been *denied* just compensation. Appellants' procedural due process claim was similarly unripe because "where the injury that resulted from an alleged procedural due process violation is merely a taking without just compensation, we cannot know whether the plaintiff suffered any injury until the takings claim has been adjudicated." *Rosedale Missionary Baptist Church v. New Orleans City*, 641 F.3d 86, 91 (5th Cir. 2011). Finally, the district court characterized the Appellants' Fourth Amendment seizure claim as unripe because it appeared dependent on the resolution of the other claims.

The Appellants challenge each of these holdings. We address their due process claim first, as it colors the analysis for their remaining claims.

**I. Procedural Due Process**

Appellants' due process claim is premised on the City's failure to give them notice and an opportunity to defend against the fines and scheduled demolition. Contrary to the district court's view, they contend, this due process

4

claim is not subsidiary to and thus unripe along with the takings claim. They argue that by its terms, their due process claim challenges injuries different from their takings claim because it concerns "the means by which the deprivation was effected, not the deprivation itself." A procedural due process violation is actionable and compensable without regard to any other injury. *See Carey v. Piphus*, 435 U.S. 247, 266, 98 S. Ct. 1042, 1054 (1978) ("Because the right to procedural due process is 'absolute' in the sense that it does not depend upon the merits of a claimant's substantive assertions . . . the denial of procedural due process should be actionable for nominal damages without proof of actual injury."). Further, their due process claim seeks distinct remedies from the takings claim. The fair market value of the property taken is ordinarily the measure of damages for a takings claim, while a "broad array of common law remedies" is available for a procedural due process claim. For the latter claim, the Appellants seek both economic damages for the demolition's harm to their plan to redevelop their property and equitable relief from the City's bill for demolition costs, none of which are available, they say, in a takings claim.[1] Appellants thus contend that the due process claim does not "assert[] the same injuries [or] seek[] the same relief as a takings claim."

The City counters that the district court correctly applied *Williamson County* to prevent premature litigation of Appellants' claims. The City relies on *John Corp. v. City of Houston*, 214 F.3d 573 (5th Cir. 2000) and *Rosedale Missionary Baptist Church v. New Orleans City*, 641 F.3d 86 (5th Cir. 2011) for the proposition that "procedural due process claims alleging that a plaintiff was not afforded sufficient due process before a demolition of property are

---

[1] We also note the Appellants' allegation that the state-court action would be futile because the City has a history of not paying state-court judgments. This does not appear on the face of their complaint. However, when asked about this contention at oral argument, the City acknowledged that it is not required to immediately pay judgments, and instead has the discretion to pass ordinances to allocate funds to pay "as they see fit."

unripe if the takings claim associated with it has not yet been decided through state court procedures." Moreover, an inverse condemnation action under Louisiana law could give the Appellants the relief they seek for the alleged due process violation. *See Mossy Motors, Inc. v. Sewerage & Water Bd. of New Orleans*, 753 So.2d 269 (La. Ct. App. 1999); *State Through Dep't of Transp. & Dev. v. Chambers Inv. Co.*, 595 So.2d 598 (La. 1992).[2]

Appellants respond that *Rosedale* and *John Corp.* are distinguishable because the court found in each of those cases that "just compensation" for a taking would give the plaintiffs full relief. Therefore, they argue their distinct due process claim should be judged under the traditional standard that the injury is complete at the time process is denied. *See Bowlby v. City of Aberdeen*, 681 F.3d 215, 225 (5th Cir. 2012).

This court's opinion in *Rosedale* guides our analysis. There, this court explained:

> *John Corp.*, like the instant case, was brought by a plaintiff alleging that it was not provided sufficient process before the state demolished its property. We held that "it will only be when a court may assess the takings claim that it will also be able to examine whether [the owner of the demolished property was] afforded less procedure than is constitutionally required." Until then, "additional factual development is necessary." The reason is that, where the injury that resulted from an alleged procedural due process violation is merely a taking without just compensation, we cannot know whether the plaintiff suffered any injury until the takings claim has been adjudicated. And because *Williamson County* requires that the takings claim be adjudicated "through the procedures the State has provided for doing so," we cannot decide the takings claims ourselves.

---

[2] The City also argues that the ordinance permitting it to demolish a property in imminent danger of collapse requires no notice. This could set up a defense to the Garretts' claim, but the propriety of the demolition under local law is not at issue in this motion to dismiss on the pleadings. On a motion to dismiss, "[a]ny well-pled factual allegations must be viewed in the light most favorable to the plaintiffs . . . ." *Beavers v. Metro. Life Ins. Co.*, 566 F.3d 436, 439 (5th Cir. 2009).

> We must therefore allow state takings procedures to run their course before we can adjudicate the procedural due process claim. Indeed, the state adjudication of the takings claim is likely to moot this case, allowing us to avoid the constitutional question whether notice is required before a taking under the Due Process Clause. Conversely, a decision by this court that the church was entitled to the value of its demolished property would permit an end-run around *Williamson County*.

*Rosedale*, 641 F.3d at 91. Particularly relevant here, the *Rosedale* court noted that "the state adjudication of the takings claim is likely to moot" the case "where the injury that resulted from an alleged procedural due process violation is merely a taking without just compensation." *Id.* The instant case, however, does not allege that the taking without just compensation was the Appellants' only injury. Appellants allege inadequate pre-deprivation due process (which is itself actionable, *see Carey*, 435 U.S. at 266, 98 S. Ct. at 1054), and economic injuries (from their constrained ability to redevelop the property), and they seek equitable relief from the City's bill for demolition costs.

The relevant inquiry then is whether the Appellants' state law inverse condemnation suit would afford a remedy for these additional injuries. Article 1, Section 4 of the Louisiana Constitution states: "Property shall not be taken or damaged by the state or its political subdivisions except for public purposes and with just compensation paid to the owner . . . ." The Louisiana Constitution explains that "[i]n every expropriation or action to take property pursuant to the provisions of this Section . . . the owner shall be compensated to the full extent of his loss." La. Const. art. 1, § 4(B)(5). "[T]he full extent of the loss shall include, but not be limited to, the appraised value of the property and all costs of relocation, inconvenience, and any other damages actually incurred by the owner because of the expropriation." *Id.* The state supreme

7

court recognized that an action for inverse condemnation arises out of the self-executing nature of these provisions. *Chambers Inv. Co.,* 595 So.2d at 602.

In *Chambers Investment Co.,* the Louisiana Supreme Court laid out a three-pronged analysis for "determining whether a claimant is entitled to eminent domain compensation" for "the taking and damaging of legal property rights, as opposed to the concrete objects of rights . . . ." 595 So.2d at 603. A plaintiff must show (1) a property right ("a recognized species of private property right"); (2) the plaintiff's property right was taken or damaged in a constitutional sense; and (3) the taking or damage was for a public purpose. *Id.* The court there held that unreasonable delay of an owner's interest in developing the property could be compensable. And in *Mossy Motors*, the court applied the *Chambers Investment* test and upheld an award for business interruption following an uncompensated taking.

Although these cases indicate that Louisiana public entities' liability for takings claims is not limited to the value of the physical property, they do not rebut the Appellants' contention that their damages cannot be fully compensated in state court. Whether the bill for demolition costs and a lien therefor is a "taking or damage in the constitutional sense" is not answered by *Chambers.* Further, the City has pointed to no case, and this court has found none, suggesting that Appellants' inverse condemnation action could result in equitable relief from the post-demolition bill of costs and lien the City imposed on the Appellants. Indeed, the Louisiana Supreme Court has recently reconfirmed that "[t]here is no specific formula set forth by the Legislature to aid courts in determining the 'full extent of the loss'" and noted that La. Rev. Stat. Section 19:9 "provides limited guidance as to how to determine the 'full

extent of the loss.'" *St. Bernard Port, Harbor & Terminal Dist. v. Violet Dock Port, Inc.*, 239 So.3d 243, 252-53 (La. 2018).[3]

Given the uncertainty of state law, this court is not convinced that an inverse condemnation action would provide the same scope of damages available to the Appellants under *Carey v. Piphus* to remedy their standalone procedural due process injury, nor could it result in a damage judgment for or equitable relief from the City's lien for demolition costs. Accordingly, the Appellants' procedural due process claim is ripe and, unlike the situations in *John Corp.* and *Rosedale,* does not overlap with their takings claim.

**II. Takings**

Appellants also argue that the district court erred in dismissing their takings claim as unripe. First, the Supreme Court and this court have held that *Williamson County* is a prudential doctrine, rather than a strict jurisdictional bar. *See Stop the Beach Renourishment, Inc. v. Florida Dep't of Envtl. Prot.*, 560 U.S. 702, 729, 130 S. Ct. 2592, 2610 (2010) (holding that an argument that a claim is unripe because the aggrieved party has not sought just compensation may be waived because it is not jurisdictional); *Rosedale*, 641 F.3d at 89 ("[T]he Supreme Court has since explicitly held that *Williamson County*'s ripeness requirements are merely prudential, not jurisdictional."). Second, fairness and judicial economy justify a federal court's hearing their takings claim now. In response, the City reasserts that the district court correctly applied *Williamson County*.

Because this court has determined that the Appellants' due process claim is ripe, we agree it would be prudent to allow their takings claim to

---

[3] Section 19:9 directs a court to "include in its consideration [of the full extent of the loss] the difference between the rate of interest of any existing mortgage on an owner-occupied residence and the prevailing rate of interest required to obtain a mortgage on another owner-occupied residence of equal value."

proceed in federal court.  This court has not previously decided a case in which prudential factors justified disregarding *Williamson County*'s state-litigation requirement, but a line of Fourth Circuit cases doing so is persuasive.  *See Town of Nags Head v. Toloczko*, 728 F.3d 391, 399 (4th Cir. 2013) ("But '[b]ecause *Williamson County* is a prudential rather than a jurisdictional rule, we may determine that in some instances, the rule should not apply and we still have the power to decide the case.' Exercise of such discretion may be particularly appropriate to avoid 'piecemeal litigation or otherwise unfair procedures.'") (quoting *San Remo Hotel, L.P. v. San Francisco*, 545 U.S. 323, 346, 125 S. Ct. 2491, 2506 (2005)); *see also Quinn v. Bd. of Cty. Comm'rs*, 862 F.3d 433, 439 & n.1 (4th Cir. 2017) (affirming a district court's decision to address a takings claim on the merits despite failure to pursue compensation in state court "in the interests of fairness and judicial economy").  *Toloczko* is particularly instructive.  There, the Fourth Circuit exercised its discretion to disregard *Williamson County*'s state litigation requirement where the plaintiffs had a ripe Section 1983 due process claim.  *Toloczko*, 728 F.3d at 398-99 ("In the interests of fairness and judicial economy, we will not impose further rounds of litigation on the Toloczkos.").  Fairness and judicial economy would be similarly served in the instant case.  Sending the Appellants' takings claim back to state court while their due process claim remains in federal court would needlessly generate additional legal expenses for the parties and would result in piecemeal litigation, which does not serve judicial economy.  Therefore, the district court erred by dismissing the Appellants' takings claim as unripe.

### III.  Unreasonable Seizure

Finally, the Appellants contend that the district court applied an improper framework to determine that their Fourth Amendment seizure claim

is unripe. The Appellants contend that "[w]hen there is a completed seizure and allegation of damages, as here, ripeness is not an issue because no further events need to occur . . . ." Consequently, the district court's reliance on the four-part ripeness test from *Severance v. Patterson*, 566 F.3d 490, 500 (5th Cir. 2009) (citing *Abbott Labs. v. Gardner*, 387 U.S. 136, 149-55, 87 S. Ct. 1507, 1515-18 (1967)), is inapplicable to this case.

We agree. The Appellants' Fourth Amendment claim is plainly ripe. *Abbott Laboratories* involved a pre-enforcement challenge to FDA regulations, while in *Severance*, the plaintiff requested declaratory and injunctive relief to prevent enforcement of a beachfront easement. *See Abbott Labs.*, 387 U.S. at 139, 87 S. Ct. at 1510; *Severance*, 566 F.3d at 492-93. The four factors are not necessary where, as here, the seizure has already occurred. The structure has been demolished, the Appellants' alleged injury is complete, and their Fourth Amendment claim is ripe.[4] The district court erroneously dismissed the Appellants' Fourth Amendment claim.

## CONCLUSION

For the reasons stated above, we **VACATE** the district court's judgment dismissing the Garretts' complaint and **REMAND** for further proceedings consistent with this opinion.

---

[4] We note that the availability of a takings claim does not necessarily subsume a plaintiff's ability to pursue a seizure claim as well. *See Soldal v. Cook Cty.*, 506 U.S. 56, 70, 113 S. Ct. 538, 548 (1992) ("Certain wrongs affect more than a single right and, accordingly, can implicate more than one of the Constitution's commands. Where such multiple violations are alleged, we are not in the habit of identifying as a preliminary matter the claims 'dominant' character. Rather, we examine each constitutional provision in turn."); *Severance*, 566 F.3d at 502 ("The Fourth and Fifth Amendments, however, both provide specific constitutional commands. That they may have evolved through caselaw to overlap in providing remedies for some deprivations of property interests does not authorize this court to fail to apply one or the other provision.").