Angela Mae BRANNAN, Individually and as Independent Executrix of the Estate of Bob Albert Brannan, Deceased, Brooks and Mary Porter, Russell and Judy Clinton, Russell Clinton as Independent Executor of the Estate of Elizabeth Clinton, Deceased, Reg and Beaver Aplin, Partners d/b/a Benchmark Developing, Louise Bullard, Diane Loggins Clark, Joseph Cornell Dewitt, Lisa Marie Dewitt Fuka, Macario Ramirez, Chrissie Dickerson, Jeffrey Dyment, The Marvin Jacobson Family Holding Company, Charles T., Cathy, James, and Patricia Meek, Mark Palmer, James C. and Patricia Pursley, Kenneth C. and Andrea Reutzel, S & S Holdings, LLC, and Rogers Thompson, Executor of the Estate of P.E. Kintz, Deceased, Appellants,

v.

STATE of Texas, Texas General Land Office, Texas Land Commissioner Jerry Patterson, in his Official Capacity, Texas Attorney General Greg Abbott, in his Official Capacity, The Village of Surfside Beach, Texas, Mayor James Bedward, Surfside Beach, Texas, in his Official Capacity, Environmental Defense, Surfrider Foundation, and Criminal District Attorney Jeri Yenne, in her Official Capacity, Appellees.

No. 01–08–00179–CV.

Court of Appeals of Texas, Houston (1st Dist.).

Feb. 4, 2010.

Ted Hirtz, Houston, TX, for Appellant.

George W. Vie III, Mills Shirley L.L.P., Galveston, TX, Ken Cross, Asst. Attorney General, Laura Ruth Jacks, Austin, TX, Trey D. Picard, Assistant District Attorney, Angelton, TX, for Appellee.

Panel consists of Chief Justice RADACK and Justices ALCALA and HANKS.

## OPINION ON REHEARING

ELSA ALCALA, Justice.

This appeal concerns the application of the Open Beaches Act at Pedestrian Beach in the Village of Surfside Beach on the Gulf Coast of Texas.[1] Appellants, Angela Mae Brannan, Individually and as Independent Executrix of the Estate of Bob Albert Brannan, deceased, Brooks and Mary Porter, Russell and Judy Clinton, Russell Clinton as Independent Executor of the Estate of Elizabeth Clinton, deceased, Reg and Beaver Aplin, Partners d/b/a Benchmark Developing, Louise Bullard, Diane Loggins Clark, Joseph Cornell Dewitt, Lisa Marie Dewitt Fuka, Macario Ramirez, Chrissie Dickerson, Jeffrey Dyment, the Marvin Jacobson Family Holding Company, Charles T., Cathy, James, and Patricia Meek, Mark Palmer, James C. and Patricia Pursley, Kenneth C. and Andrea Reutzel, S & S Holdings, LLC, and Rogers Thompson, Executor of the Estate of P.E. Kintz, deceased, (collectively, "the Owners"), have filed a motion for rehearing and for en banc reconsideration of our opinion issued on August 28, 2009. We deny the rehearing, but we withdraw our opinion and judgment of August 28, 2009 and substitute this opinion and judgment in their place. Because we issue a new opinion in connection with the denial of rehearing, the Owners' motion for en banc reconsideration of our prior opinion is moot. *Richardson–Eagle, Inc. v. William M. Mercer, Inc.*, 213 S.W.3d 469, 472 (Tex. App.-Houston [1st Dist.] 2006, pet. denied).

The Owners appeal from the trial court's judgment in favor of appellees, the State of Texas, Texas General Land Office, Texas Land Commissioner Jerry Patterson, in his official capacity, Texas Attorney General Greg Abbott, in his official capacity, the Village of Surfside Beach, Texas, Mayor James Bedward, Surfside Beach, Texas, in his official capacity, Environmental Defense, Surfrider Foundation, and Criminal District Attorney Jeri Yenne, in her official capacity.

The Owners present four issues in this appeal. First, the Owners assert the State has not proven that a public beach easement has ever existed at Surfside Beach. Second and alternatively, the Owners assert that even if an easement existed at Surfside Beach, their houses should not be removed from the easement because the houses were built outside of the easement before the line of vegetation moved landward and the public's use of the beach under the easement can co-exist with the houses. The Owners' last two issues contend that they are entitled to damages because the ordered removal of their houses has resulted in a permanent taking of their property without compensation, and the denial of access to and utilities for their property by the State and Village has resulted in a regulatory taking.

After the trial court issued the injunction ordering the removal of all of the 14 houses on the easement, 11 of those houses were removed by the force of nature, leaving only three houses. We conclude the trial court properly ordered the removal of the three houses remaining on the easement that moved to them and properly denied these three owners' claims for damages due to a permanent taking. We also conclude the trial court properly denied all the Owners' claims for regulatory taking damages. We affirm.

## Background

The Owners had houses on beachfront lots in the Village of Surfside Beach. The Owners' lots are in an approximately one and one-half mile area known as "Pedestri-

---

1. *See* TEX. NAT. RES.CODE ANN. §§ 61.001–.254 (Vernon 2001 & Supp. 2009).

an Beach" because the Village prohibited driving along that stretch of beach in the late 1970s or early 1980s.

For the most part, the Owners' houses were built in the 1960s, and, at the time of construction, were on the landward side of the vegetation line. In 1998, Tropical Storm Frances moved the vegetation line landward, making the houses stand between the water's edge and the vegetation line. David Dewhurst, who was then the commissioner of the General Land Office, sent a letter to the Attorney General of Texas, identifying a number of houses in Surfside Beach that were seaward of the vegetation line, claiming these houses were encroachments on the public beach in violation of the Open Beaches Act. The Attorney General decided to take action to remove houses that were an "immediate threat to public health and safety" or that "significantly blocked public access." The Attorney General informed the Owners (or their predecessors in title) that their houses did not meet either criteria and were not subject to removal. However, because the General Land Office had classified the Owners' houses as encroachments on the public beach, the Village refused permits to allow the Owners to repair septic systems and cut off water to some of the properties at issue.

In 2001, a number of property owners filed suit against the State and the Village, seeking a declaratory judgment affirming their right to repair, maintain, and access their houses and also seeking damages for the loss of use of the property following Tropical Storm Frances. The State filed a counterclaim, seeking removal of the houses pursuant to the Open Beaches Act.[2] Most of the original plaintiffs agreed to nonsuit their claims in return for the State dropping its counterclaim for removal of their houses. The remaining plaintiffs

amended their petition, adding a claim that the imposition of the public beach easement and the removal of their houses were takings without just compensation.

Of the Owners currently involved in this appeal, the ones involved in the original litigation were the Brannans, the Porters, and Clinton, individually and as executor. For clarity, when we refer to these original plaintiffs as a separate group, we will call them the Original Owners. In their original petition, first amended petition, and second amended petition, the Original Owners acknowledged the existence of an easement at Surfside Beach in the Gulf Coast of Texas. The Original Owners argued that the easement at Surfside Beach did not exist on the land underneath their houses, but acknowledged the existence of an easement on the land seaward of their houses.

In examining the Original Owners' live pleadings at the time of the State's motion for summary judgment, the Owners described the situation as follows:

> At the time each of these houses was constructed all were landward of the vegetation line. The houses did not move. They did not encroach onto the public easement. The vegetation line has moved landward. The public easement has moved landward with it. Using a State developed concept called a "rolling easement," developed from the common law of meandering easements, the public beach easements have been imposed on the land on which these Plaintiffs' houses stood.

The owners also stated,

> The beach houses are now seaward of the current vegetation line. Public easements of use and lateral passage have

---

2. *See* Tex. Nat. Res Code Ann. § 61.018 (Vernon Supp. 2009).

been imposed upon the real property on which the beachhouses stand.

In a section listing defenses to the State's counterclaim, the Original Owners asserted,

The public's easement of use of the land on which the [Original Owners'] beachhouses sit is not unrestricted. The public's meandering easement is limited by conditions on the land at the time the easement is imposed. One of these is the existence of the [Original Owners'] beachhouses.....

Not only did the live pleadings by the Original Owners acknowledge the existence of the easement, but their responses to the State's partial motion for summary judgment similarly treated the existence of the easement as an undisputed fact. In their response, the Original Owners said that their "initial intent in filing their action for declaratory judgment was to ask the State court to determine and to declare the scope of the public easement of use when it migrates onto private land on which there are existing houses." They also stated, "One would think that after hearing the evidence that a District Court in Texas could work out an accommodation between the rights of the public and the rights of the owner." An affidavit from one of the Original Owners, Brooks Porter, averred that the "vegetation line in the vicinity of my beachfront properties, and the public easement it delineates at Surfside, migrates...." Furthermore, he stated, "As a plaintiff I joined in the Original Petition to ask this District Court to determine the scope of the public easement which had been imposed on my property." The Original Owners primarily argued that when the easement migrates into their property, their houses should be allowed to remain on the easement because the houses do not interfere with the public's use of the beach, and if their houses are ordered removed or if their access to utilities and permits to allow repairs are denied, then they should be compensated for that as a governmental taking.

After Environmental Defense and the Surfrider Foundation intervened as defendants, the trial court ruled in 2004 on the motions for partial summary judgment. The rulings pertinent to this appeal were that imposition of the public beach easement and the removal of the houses were not takings of property, and that the plaintiffs were not entitled to compensation. After these rulings, the Commissioner of the General Land Office suspended for two years the efforts to remove the houses, pursuant to section 61.0185 of the Open Beaches Act.[3] The lawsuit was effectively stayed from November 2004 to June 2006, when the moratorium period ended.

In October 2006, an unusually high tide or "bull tide" hit Pedestrian Beach. The tide removed a large amount of sand from the beach, damaging pilings and water and sewer connections to a number of houses. In response, the Village disconnected water and sewer service to the houses. The mayor also requested CenterPoint disconnect electric service to the houses. The Village denied or ignored requests from Owners to reconnect to utilities and to allow them to repair their houses.

Following the bull tide, the State reasserted the right to remove houses that were seaward of the vegetation line as encroachments on the public beach easement. The State also asserted that some of the houses were on submerged lands, to which the State holds title. At this point in the litigation, following the bull tide, many new plaintiffs joined the lawsuit by filing petitions in intervention in late 2006

3. See TEX. NAT. RES.CODE ANN. § 61.0185 (Vernon Supp. 2009).

through early 2007. For clarity, we refer to this group as the Intervening Owners. Among these Intervening Owners were Louise Ballard, Dianne Loggins Clark, and Macario Ramirez and Chrissie Dickerson. Ballard was the owner of property at 411 Beach Drive. Her house was landward of the vegetation line when she purchased it on July 21, 1981. Clark was the owner of property at 211 Beach Drive. Clark's house was also landward of the vegetation line when she purchased it on June 10, 2002. When she bought the property, Clark's contract included the notice provision under section 61.025 of the Texas Natural Resources Code warning that a structure that becomes seaward of the vegetation line as a result of natural processes may be removed.[4] Macario Ramirez and Chrissie Dickerson owned the property at 507 Beach Drive. Their house was landward of the vegetation line when it was constructed. They purchased the house in 1978, prior to the requirement that the notice provision in section 61.025 be included in the contract.[5]

Similar to the earlier Original Owners' petitions, the Intervening Owners' initially acknowledged that an easement did exist seaward of their property, but they denied that one ever existed on their particular property that was immediately landward of the easement. The Intervening Owners, however, mentioned that there was no reported case establishing an easement on Follett's Island on which Surfside is located. In April 2007, the Original Owners

and Intervening Owners jointly filed an amended supplement to the second amended petition and to intervenors' individual petitions seeking to allow them to immediately repair their houses and to have utilities connected. This supplemental petition for the first time asked for a declaratory judgment that "the State has failed to plead and to prove that the public ever established a Common Law beach easement on that section of Follet's Island in the delta of the Brazos River, which is now known as the Pedestrian Beach at Surfside Beach, Texas by any of the means required by the Common Law."

In mid 2007, the State amended its counterclaim to include all the houses of the Intervening Owners, as well as the Original Owners. The State's counterclaim asserted that all of the properties are adjacent to the Gulf of Mexico in the Village of Surfside Beach and have houses that are either encroachments on the public beach easement or on submerged land to which the State holds title. The State's counter-claim asserted that the public has acquired a right of use easement in the Gulf of Mexico beach where the properties at issue are located. Also according to the counterclaim, the public historically freely and openly used Surfside Beach from the edge of the Gulf of Mexico to the line of vegetation.

In mid 2007, the Village filed a motion for summary judgment. The Village asserted,

Some of these intervenors purchased their property with contracts that included the notice provision under section 61.025 of the Texas Natural Resources Code warning that a structure that becomes seaward of the vegetation line as a result of natural processes may be removed. *See id.* Some of the intervenors, however, became owners of their property before the notice was a requirement for contracts in this area.

---

4. *See* TEX. NAT. RES.CODE ANN. §§ 61.025 (Vernon Supp. 2009).

5. At around the same time, similar petitions for intervention were filed by Reg and Beaver Aplin, Judy Clinton; Joseph Dewitt and Lisa Dewitt Fuka; Marvin Jacobson Family Holding; Charles, Cathy, James and Patricia Meek; James and Patricia Pursley; Kenneth and Andrea Reutzel; Roger Thomson, executor of the estate of P.E. Kintz, S & S Holdings, Jeffrey Dyment, and Marc Palmer.

[T]o the extent that any takings claims against the Village remain and have not been disposed of by previous rulings of the Court, the Village and Mayor are entitled to summary judgment because there is no taking as a matter of law. . . . [T]he Village has shown no intent to take under eminent domain. The only intent of the Village act to [sic] within the existing laws and regulations passed by the State and [the General Land Office].

The Owners responded to the Village's motion for summary judgment. The Owners contended that the Village, not the State or the General Land Office, was the entity that denied permits for repairs and was the "front man" in disconnecting or denying reconnection to utilities. Later that month, the Village responded to the Owners' reply to their motion for summary judgment. The Village asserted that the existing General Land Office regulations and the terms of the Open Beaches Act did not grant the Village any discretion in denying the permits for repair and would be subject to penalties for issuing permits in violation of the regulations or the Act. The trial court ruled in favor of the Village on the plaintiffs' taking claims, stating, "For the reasons stated in the Motion for Summary Judgment, the Court finds the motion is meritorious and should be granted." The court ordered that the Owners take nothing against the Village and the mayor.

In August 2007, the State filed a motion for final summary judgment on its Open Beaches Act counterclaims seeking a court order requiring the removal of the houses from the public beach easement. The motion recited that it was intended to build upon prior, partial summary judgment rulings by the trial court in favor of the rolling beach easement. The motion stated, "This Court has already ruled that the rolling easement enforced under the [Open Beaches Act] is not a compensable taking under the United States and Texas constitutions." Under a section called "Established Material Facts," the motion stated, "All the tracts lie entirely on the Gulf side" of Beach drive. The motion stated that the public has freely and openly used the Gulf beach at Surfside "forever," and it attached evidence from three sources to support that statement. The motion also asked for a civil penalty against each plaintiff who had maintained a structure on the public beach easement in violation of the Open Beaches Act.

In response to this motion for summary judgment, the Owners stated, "Although the State describes its 'rolling easement' as having migrated on Plaintiffs' lands, the State has failed to prove the public has established any easement on any strip of land on Follet's Island at Surfside, Texas seaward of Plaintiffs' properties." The Owners, however, did not attach any evidence challenging the existence of the easement Surfside Beach. The Owners refuted the claim that their houses were encroachments on the easement that migrated to them and reasserted their takings claims.

In September 2007, the trial court granted the State's motion for summary judgment for an injunction to remove houses from the public beach easement, but denied the State's motion seeking civil fines pursuant to the Open Beaches Act.[6] After some plaintiffs settled and some of the claims were nonsuited, the trial court severed the submerged land claims and rendered a final judgment, affirming the earlier partial summary judgments and ordering the Owners to remove their houses. After the nonsuits and severance, the only

6. *See* TEX. NAT. RES.CODE ANN. § 61.018(c) (Vernon Supp. 2009).

issues and claims before us in this appeal are whether a public beach easement exists that should be imposed on the Owners' properties and, if so, whether the easement, in the scope asserted by the State, results in a taking of the Owners' properties for which they are entitled to just compensation.

On September 12 and 13, 2008, the tidal surge associated with Hurricane Ike destroyed 10 of the 14 houses at issue in this appeal. While the rehearing in this matter was pending, the Owners notified this Court that one of the remaining houses had collapsed during a tidal surge. The remaining houses on the beach after the storm are those of Diane Loggins Clark, 221 Beach Drive; Louise Bullard, 411 Beach Drive; and Marcario Ramirez and Chrissie Dickerson, 507 Beach Drive. These houses are now on the row parallel to and seaward of the vegetation line at Pedestrian Beach in Surfside.

### Standard of Review for Summary Judgments

We review summary judgments de novo. *Valence Operating Co. v. Dorsett,* 164 S.W.3d 656, 661 (Tex.2005). Summary judgment is proper only when a movant establishes that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. TEX.R. CIV. P. 166a(c). In reviewing a summary judgment, we must indulge every reasonable inference in favor of the nonmovant, take all evidence favorable to the nonmovant as true, and resolve any doubts in favor of the nonmovant. *Valence Operating Co.,* 164 S.W.3d at 661.

### The Texas Open Beaches Act

■ The Open Beaches Act protects the public's rights of access to and use of public beaches. If the public has acquired an easement or right of use by prescrip-

tion, dedication, or custom, the Act provides a means of enforcing the public's rights. TEX. NAT. RES.CODE ANN. § 61.011(a) (Vernon 2001). The Texas Open Beaches Act states,

It is declared and affirmed to be the public policy of this state that the public, individually and collectively, shall have the free and unrestricted right of ingress and egress to and from the state-owned beaches bordering on the seaward shore of the Gulf of Mexico, or if the public has acquired a right of use or easement to or over an area by prescription, dedication, or has retained a right by virtue of continuous right in the public, the public shall have the free and unrestricted right of ingress and egress to the larger area extending from the line of mean low tide to the line of vegetation bordering on the Gulf of Mexico.

*Id.*

The Act provides that the appropriate official "shall file" a suit to enforce the public's rights. TEX. NAT. RES.CODE ANN. § 61.018(a) (Vernon Supp. 2009). The Act states,

Any county attorney, district attorney, or criminal district attorney, or the attorney general . . . *shall file* in a district court of Travis County, or in the county in which the property is located, a suit to obtain either a temporary or permanent court order or injunction, either prohibitory or mandatory, to remove or prevent any improvement, maintenance, obstruction, barrier, or other encroachment on a public beach, or to prohibit any unlawful restraint on the public's right of access to and use of a public beach or other activity that violates this chapter.

*Id.* (emphasis added).

The Act defines "public beach" as follows:

[A]ny beach area, whether publicly or privately owned, extending inland from the line of mean low tide to the line of vegetation bordering on the Gulf of Mexico to which the public has acquired the right of use or easement to or over the area by prescription, dedication, presumption, or has retained a right by virtue of continuous right in the public since time immemorial, as recognized in law and custom. . . .

*Id.* § 61.001(8) (Vernon 2001).

The Act includes a notice provision to people who purchased property in the counties on the Gulf of Mexico. *Id.* § 61.025 (Vernon Supp.2009). The notice provisions warns that a structure that becomes seaward of the vegetation line as a result of natural processes may be removed. *Id.* In pertinent part, section 61.025 requires a notice in substantially the following form:

**DISCLOSURE NOTICE CONCERNING LEGAL AND ECONOMIC RISKS OF PURCHASING COASTAL REAL PROPERTY NEAR A BEACH**

. . . .

● IF YOU OWN A STRUCTURE LOCATED ON COASTAL REAL PROPERTY NEAR A GULF COAST BEACH, IT MAY COME TO BE LOCATED ON THE PUBLIC BEACH BECAUSE OF COASTAL EROSION AND STORM EVENTS.

● AS THE OWNER OF A STRUCTURE LOCATED ON THE PUBLIC BEACH, YOU COULD BE SUED BY THE STATE OF TEXAS AND ORDERED TO REMOVE THE STRUCTURE.

● THE COSTS OF REMOVING A STRUCTURE FROM THE PUBLIC BEACH AND ANY OTHER ECONOMIC LOSS INCURRED BECAUSE OF A REMOVAL ORDER WOULD BE SOLELY YOUR RESPONSIBILITY.

The real property described in this contract is located seaward of the Gulf Intracoastal Waterway to its southernmost point and then seaward of the longitudinal line also known as 97 degrees, 12', 19″ which runs southerly to the international boundary from the intersection of the centerline of the Gulf Intracoastal Waterway and the Brownsville Ship Channel. If the property is in close proximity to a beach fronting the Gulf of Mexico, the purchaser is hereby advised that the public has acquired a right of use or easement to or over the area of any public beach by prescription, dedication, or presumption, or has retained a right by virtue of continuous right in the public since time immemorial, as recognized in law and custom.

The extreme seaward boundary of natural vegetation that spreads continuously inland customarily marks the landward boundary of the public easement. . . .

Much of the Gulf of Mexico coastline is eroding at rates of more than five feet per year. Erosion rates for all Texas Gulf property subject to the Open Beaches Act are available from the Texas General Land Office.

State law prohibits any obstruction, barrier, restraint, or interference with the use of the public easement, including the placement of structures seaward of the landward boundary of the easement. OWNERS OF STRUCTURES ERECTED SEAWARD OF THE VEGETATION LINE (OR OTHER APPLICABLE EASEMENT BOUNDARY) OR THAT BECOME SEAWARD OF THE VEGETATION LINE AS A RESULT OF PROCESSES SUCH AS SHORELINE EROSION ARE SUBJECT TO A LAWSUIT BY THE

STATE OF TEXAS TO REMOVE THE STRUCTURES.

*Id.*

## Jurisdiction

 The trial court ordered the Owners' houses removed from the easement, but none of the houses have been removed as a result of the trial court's order. Instead, forces of nature removed all but three of the houses. We have no jurisdiction to review whether the trial court properly ordered the removal of the houses that have been removed by forces of nature because that matter is moot due to the fact that these houses are no longer on the properties for reasons unrelated to the trial court's order. The mootness doctrine limits courts to deciding cases in which an actual controversy exists. *Camarena v. Tex. Employment Comm'n*, 754 S.W.2d 149, 151 (Tex.1988). "[A] case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome.'" *BP Prods. N. America, Inc. v. Houston Chronicle Pub. Co.*, 263 S.W.3d 31, 34 (Tex.App.-Houston [1st Dist.] 2006, no pet.) (quoting *City of Erie v. Pap's A.M.*, 529 U.S. 277, 287, 120 S.Ct. 1382, 1390, 146 L.Ed.2d 265 (2000)).

We hold the following:

- We lack jurisdiction over the claims concerning the injunction ordering the removal of those houses that have been removed by the force of nature and the damages sought due to any court-ordered removal of those houses;

- We have jurisdiction to review the injunction ordering the removal of the three houses that remain at 221, 411, and 507 Beach Drive, and damages sought from the removal of the three houses; and

- We have jurisdiction to review the damages asserted by all the Owners for regulatory takings for the period of time beginning when the services were declined by the State and Village to the period of time when the houses were or will be removed.

For clarity, the Owners with the three houses that remain standing will be referred to as the Three Intervening Owners because they joined the case late in the litigation in 2006 after the trial court had already rendered partial summary judgment orders in this case.

### Proof of Easement on Surfside Beach

In their third issue, the Three Intervening Owners challenge the trial court's judgment by claiming the State has never proven the existence of an easement on Surfside Beach. We conclude the evidence conclusively establishes an easement by implied dedication.

### A. Matters Excluded From Our Consideration

 At the outset, we make two observations concerning our analysis of whether an easement exists at Surfside Beach. First, the existence of the easement was considered an undisputed fact throughout the first five years of the litigation, including when the partial summary judgments were granted in favor of the State against the Original Owners. It was not until petitions in intervention were filed in the sixth year of the litigation that a challenge was made to the existence of the easement. The Three Intervening Owners, however, were not a part of the original litigation that had conceded the existence of the easement, and, therefore, we address the merits of the challenge based on the motion for final summary judgment filed after they became parties to the litigation. We have excluded from our consideration the admissions by the Original Owners that

the public has historically had a use easement at Pedestrian Beach in Surfside. *See Bowen v. Robinson,* 227 S.W.3d 86, 92 (Tex.App.-Houston [1st Dist.] 2006, pet. denied) (noting judicial admission is binding upon party making admission).

Second, the Open Beaches Act appears to be inconsistent in whether the Act itself declares the existence of an easement on properties fronting the Gulf of Mexico or whether an easement there must be proven to exist there under the common law. On the one hand, the Act's required notice for all contracts for sale of property observes that "the public *has acquired* a right of use or easement to or over the area of any public beach by prescription, dedication, or presumption, or has retained a right by virtue of continuous right in the public since time immemorial, as recognized in law and custom" in all properties that are "in close proximity to a beach fronting the Gulf of Mexico." *See* Tex. Nat. Res.Code Ann. § 61.025 (emphasis added). On the other hand, the Act defines "public beach" as follows:

> [A]ny beach area, whether publicly or privately owned, extending inland from the line of mean low tide to the line of vegetation bordering on the Gulf of Mexico to which the public has acquired the right of use or easement to or over the area by prescription, dedication, presumption, or has retained a right by virtue of continuous right in the public since time immemorial, as recognized in law and custom.

*Id.* § 61.001(8); *see Arrington v. Mattox,* 767 S.W.2d 957, 958 (Tex.App.-Austin 1989, writ denied) (holding Open Beaches Act does not create public beach easement where none exists). Because the State solely relies on the common law to show an easement was historically established at Surfside Beach, our analysis focuses on whether an easement has been proven to exist under the common law, without relying on the part of the Open Beaches Act that states that an easement exists at this location.

**B. Law for Establishing Easements By Implied Dedication**

An implied dedication, under the common law, requires "the idea that the owner consented to the use of his land ... to the extent that the court will hold that he dedicated it to public use, whether by express words, overt acts, or even by such inaction on the part of the owner as would justify a conclusion that he intended to dedicate his land to public use." *Owens v. Hockett,* 151 Tex. 503, 251 S.W.2d 957, 959 (1952). The essential elements of implied dedication are: (1) the acts of the landowner induced the belief that the landowner intended to dedicate the property to public use; (2) he was competent to do so; (3) the public relied on these acts and will be served by the dedication; and (4) there was an offer and acceptance of the dedication. *Las Vegas Pecan & Cattle Co., Inc. v. Zavala County,* 682 S.W.2d 254, 256–57 (Tex.1984). "Implied dedication need not be shown by deed nor need public use b[e] shown for any particular length of time." *Seaway Co., Inc. v. Attorney Gen.,* 375 S.W.2d 923, 935–36 (Tex.Civ.App.-Houston 1964, writ ref'd n.r.e.). In the case of implied dedication this intent is not, or at least need not be, manifested by an expression to that effect, but may be manifested, and usually is, by some act or course of conduct. *Id.* at 936. For there to be a dedication there must be acceptance by the public. *See id.* "The act of throwing open property to the public use, without any other formality, is sufficient to establish the fact of dedication to the public; and if individuals, in consequence of this act, become interested to have it continue so, the owner cannot resume it." *Id.* at 936 (citing *Owens,* 251 S.W.2d at 958).

"It is sufficient if the record shows unequivocal acts or declarations of the land owner, dedicating the same to public use, and where others act on the faith of such dedication, the land owner will be estopped to deny the dedication, or make any future use of the property inconsistent with any purpose for which the land was dedicated." *Id.*

### C. Analysis of Evidence Establishing Implied Dedication

The State's motion for final summary judgment included a section entitled "Established Material Facts," which states,

For decades the public has freely and openly used the Gulf beach at Surfside. Traditionally people have driven theirs cars onto the beach and along it, parking there and engaging in the usual beach-related recreational activities like swimming, boating, surfing, fishing, picnicking, sunbathing, beach combing, and relaxing. In times past, people drove all the beach in Surfside—from its southwest end at the Freeport jetties to and through the Village's city limits to the Northeast. In 1978 the village imposed a 20 mile-per-hour speed limit on driving on the public beach defined in the ordinance as the area between the Gulf's waters and the vegetation line. The vegetation line is customarily recognized as the landward boundary of the public beach in Surfside.

(Footnote citations to summary judgment evidence omitted). The motion asserts that "Plaintiffs' row of beach houses sits closer to the Gulf than any row that parallels the beach." The motion explains, "As erosion has narrowed the beach seaward of plaintiffs' structures, the Village by ordinance has prohibited cars from plaintiffs' stretch of the beach while preserving continued pedestrian passage and use there."

In a section entitled "Liability as a Matter of Law," the State contends,

There are no disputed issues of fact—only disputed issues of law—as to whether Plaintiff' structures are within the public beach easement at Surfside and thus subject to removal and penalties under the OBA.... The OBA establishes a policy and a mechanism for protecting easement rights acquired by the public through historical use of the Gulf beaches.... Under the facts established herein, the vegetation line boundary of the public's easement at Surfside has moved landward of Plaintiffs' structures.

(Footnote citations to evidence and authority omitted). As part of its motion for summary judgment, the State includes evidence establishing the existence of an easement at Surfside Beach by producing affidavits from Karlyn Hamby and Ellis Pickett, and the deposition testimony of Albert Brannan.

The summary judgment evidence from Hamby's affidavit shows the historical use by the public of the land adjacent to the Gulf at Surfside. Hamby was the Village's city secretary and building official. He states he has lived in Surfside since 1989 and during that time has seen the public use the pedestrian beach up to the line of vegetation without asking permission of the owners of the land along the beach. Hamby also said the beach was a public beach and had been "for as long as I can remember." In his affidavit, Hamby also states,

This car restriction finds its origins in the Village's first general traffic law, Ordinance No. 47, adopted in 1978.... A limited car prohibition was adopted two years later that banned driving and parking "on the public beach lying between" Second (Starfish) and Thirteenth (Jettyview) Streets, which included the beach seaward of Beach Drive.... In 1992, "by reason of the narrow width of the beach in the area," the Village re-

designated the car-restricted area to its current stretch of beach—between Jetty View Road on the west and Starfish Street on the east, which encompasses all the beach seaward of Beach Drive.... Although car use has been restricted, the beach seaward of Beach drive—like the rest of the beaches in Surfside—*has always remained a public beach available to local citizens and visitors alike.*

(Emphasis added). According to Hamby, the Owners' houses are seaward of the vegetation line at Pedestrian Beach and interfere with the public's ability to access and use the beach, particularly at high tide, when water's edge reaches the houses.

The State also produced the affidavit of Ellis Pickett, who stated he was familiar with the beaches in Galveston and Brazoria counties. Pickett states he had surfed on the beach at Surfside for decades. He also reports that the public has historically used the beach up to the vegetation line. Pickett states that when he first started visiting the beach in the 1960s, he and members of the public drove along Surfside Beach, using it as a public road, as follows:

> The Gulf of Mexico beach at Surfside lies generally in a northeast-southwest orientation. The southwest end is at the jetties along the Freeport channel. The beach then runs northeastward for four or five miles, where it leaves Surfside's municipal limits and runs several more miles all the way to San Luis Pass. When I first started visiting Surfside in the 1960's, the public could drive cars onto the beach and then drive all the way from the jetties to San Luis Pass.

When the beach was closed to vehicles in the early 1980s, Picket explains that Surfside Beach continued to be used by the public. He states,

Then, around 1980, the Surfside municipal government closed a part of the beach to cars. This "pedestrian" beach was that part of the Village's beach generally seaward of Beach Drive, the city street closest to and parallel to the Gulf. Although the Village, no longer allowed car driving on the pedestrian beach, the public could still freely walk it and otherwise use it like the rest of the beach. And the City still permitted driving and parking on either side of this pedestrian-only segment. Despite the vehicular restriction, I have continued to use this part of the beach, along with many others, for surfing and passage along the beach.

. . . .

People used the Surfside beach for the typical activities—swimming, fishing, sunbathing, playing, relaxing, beach combing, and, of course, surfing.

Picket also describes activities by the public to keep the beach clean. Pickett states that the public "could drive or walk along the beach without seeking a beachfront owner's permission to be on it."

The State also identifies portions of Brannan's deposition testimony. Brannan at one point owned 10 beachfront lots. Brannan states that he bought his property in the 1950s and later served as mayor of the Village. He was mayor at the time the section of beach at issue became pedestrian only. He states he had seen people use the beach seaward of his property for recreational purposes on the beach in Surfside "forever." Brannan's deposition testimony acknowledges that before the early 1970s, Pedestrian Beach was open to traffic and people would drive through his 10 lots adjacent to 303 Beach Drive.

Brannan testified in his deposition that Pedestrian Beach at Surfside is approximately one and one-half miles long begin-

ning at southeast of the 332 entrance, toward the jetties to about the last house that is on the beach toward the jetties. He said that "forever" people drove on Pedestrian Beach until it was made pedestrian.

In this appeal, the Three Intervening Owners focus solely on whether there was an easement established on their particular property. Omitting the citation to authority, the entire argument in the original appellate brief by the Three Intervening Owners to challenge the proof of an easement by implied dedication, is as follows:

> Nor can any public use of the land around the Property Owners' homes—permitted or not—be treated as an implied dedication of that land. Certainly, the Property Owners have expressed no intent to dedicate the land that is necessary to support their homes. Such an intent is explicitly denied, and the Property Owners' defense of their homes belies any contrary claim.

This argument focuses solely on whether the Three Intervening Owners themselves dedicated their land. However, it is undisputed that these Three Intervening Owners did not themselves dedicate their land for public use. Other than their sole argument that they did not themselves dedicate the land for public use, the Three Intervening Owners do not, in the original appellate brief, assert the evidence failed to show that historically there was an easement at Pedestrian Beach extending inland from the line of mean low tide to the line of vegetation. Furthermore, in their summary judgment response, the Three Intervening Owners produced no evidence to dispute the evidence of an easement at Pedestrian Beach extending inland from the line of mean low tide to the line of vegetation.

■ The summary judgment evidence shows that for a period of at least 40 years, the public has openly used Pedestrian Beach where these properties are located. The evidence shows that Pedestrian Beach "has always" and "forever" been a public beach "widely" used by the public up to the line of vegetation without the public asking permission from any owner of the property; in the 1960s, Pedestrian Beach was a public road in the 1960s until cars were banned there by the Village; Pedestrian Beach was used by the public for typical activities such as swimming, fishing, sunbathing, playing, relaxing, beach combing, surfing; and Pedestrian Beach has been kept clean by members of the public. As noted above, the Three Intervening Owners failed to introduce any evidence concerning this issue. The summary judgment evidence conclusively establishes the public acquired an easement by implied dedication. *See Seaway Co., Inc.*, 375 S.W.2d at 936 (holding dedication for public beach easement was established by evidence that owners, beginning with original owners, threw open beach to public use; beach remained open for over 100 years free of permanent obstructions or signs to keep public away; owners allowed members of public generally to use beach each year without public asking permission and without protest from land owners; county expended funds on beaches to keep debris cleared so beach could be used by public; and patrolling of beach by law enforcement officers was carried on openly and for such length of time owners should have known of it); *see also Las Vegas Pecan & Cattle Co., Inc.*, 682 S.W.2d at 256–57 (holding implied dedication was established by evidence that road in question had been used by public generally for at least 15 years; county maintained road for that period of time; one witness said he had used road continuously since 1911; no one had ever asked permission, or been denied permission, of adjoining landowners to use road; there was continuous use of road by public generally for 30 years);

*Villa Nova Resort, Inc. v. State*, 711 S.W.2d 120, 128 (Tex.App.-Corpus Christi 1986, no writ) (holding evidence public had openly used beach without owner protesting for over 50 years sufficient to show public acquired easement or right of use by dedication); *Moody v. White*, 593 S.W.2d 372, 379 (Tex.Civ.App.-Corpus Christi 1979, no writ) (holding evidence showed dedication because prior owner stood by and watched public use "his" beach for many years and public use of beach by swimming, fishing, and engaging in other activities constituted acceptance of that dedication).

We overrule the Three Intervening Owners' third issue.

## Houses Must Be Removed from the Easement at Surfside Beach

In their first issue, the Three Intervening Owners contend the trial court erred by ordering houses removed and by impeding residential uses of the houses because the rolling easement must accommodate a lawfully built, preexisting house when it migrates landward. The State describes this suggestion by the Three Intervening Owners as a "Swiss cheese" approach where the houses remain on the easement and the public accesses the beach in the areas underneath the pilings of the houses and between the houses. In short, the Owners request we reverse the trial court's order and render judgment that the Owners need not remove houses from where they stand, even if they stand on an easement, because the easement must accommodate the houses since the houses were preexisting and the easement rolled to the houses.

Intermediate courts in Texas have upheld the rolling easement doctrine by finding that it is proper under the Open Beaches Act or common law principles. The rolling easement is specifically mentioned by and fits the intent of the Act to preserve the public beach. *See* TEX. NAT. RES.CODE ANN. § 61.025 (notice provision to people who purchase property in counties on Gulf of Mexico warns that "structure located on coastal real property near a gulf coast beach ... may come to be located on the public beach because of coastal erosion and storm events" and states that "structures ... that become seaward of the vegetation line as a result of processes such as shoreline erosion are subject to a lawsuit by the State of Texas to remove the structures"); *Feinman v. State*, 717 S.W.2d 106, 110–11 (Tex.App.-Houston [1st Dist.] 1986, writ ref'd n.r.e.) (holding intent of Act, once public easement to vegetation line exists, is to allow boundaries of easement to shift as line of mean low tide and vegetation line shift); *see also Arrington v. Tex. Gen. Land Office*, 38 S.W.3d 764, 766 (Tex.App.-Houston [14th Dist.] 2001, no pet.) (stating that "once a public beach easement is established, it is implied that the easement moves up or back to each new vegetation line, and the State is not required to repeatedly re-establish that an easement exists up to that new vegetation line (but only that the line has moved).") (citing *Feinman*, 717 S.W.2d at 108–11). Aside from the Open Beaches Act, at least one intermediate court in Texas has upheld the rolling easement doctrine by analogizing the rolling easement to the common law principle that allows property lines to change with submerged land. *Matcha v. Mattox ex rel. the People of Tex.*, 711 S.W.2d 95, 100 (Tex.App.-Austin 1986, writ ref'd n.r.e.) (stating that "because legal title shifts with the natural movements of the beach, ... this Court has concluded that the public easement also shifts with the natural movements of the beach" and that "boundary line may move landward or seaward as the beach moves, and the property lines move accordingly") (citing *State v. Balli*, 144 Tex. 195, 190 S.W.2d 71 (1944)). In permitting the rolling ease-

ment, the Austin court of appeals also focused on the historical use of the easement, which would have necessarily fluctuated with the movement of the vegetation line. *See Matcha,* 711 S.W.2d at 98–100. In explaining why the easement must roll under the common law, the Austin court of appeals explains,

> A public easement on a beach cannot have been established with reference to a set of static lines on the beach, since the beach itself, and hence the public use of it, surely fluctuated landward and seaward over time. The public easement, if it is to reflect the reality of the public's actual use of the beach, must migrate as did the customary use from which it arose. The law cannot freeze such an easement at one place any more than the law can freeze the beach itself.... An easement fixed in place while the beach moves would result in the easement being either under water or left high and dry inland, detached from the shore. Such easement, meant to preserve the public right to use and enjoy the beach, would then cease functioning for that purpose.

*Id.* at 100.

██ It is important to note that, in this issue, the Three Intervening Owners spe-cifically assume that an easement can properly roll when the line of vegetation moves. The Three Intervening Owners do not assert on appeal or at trial that an easement cannot roll or migrate, nor do they present any challenge concerning whether the underlying support for the rolling easement comes from the Open Beaches Act or from common law.[7] Therefore, they have waived the right to challenge whether an easement can roll and whether the support for that comes from the Open Beaches Act or from common law. *See* Tex.R. Civ. P. 166a(c) ("Issues not expressly presented to the trial court by written motion, answer or other response shall not be considered on appeal as grounds for reversal."); *Rayl v. Borger Econ. Dev. Corp.,* 963 S.W.2d 109, 114 (Tex.App.-Amarillo 1998, no pet.) (holding that party may not appeal summary judgment in favor of opponent when grounds opposing summary judgment asserted on appeal were not raised before trial court); *see also Malcomson Rd. Util. Dist. v. Newsom,* 171 S.W.3d 257, 279 (Tex.App.-Houston [1st Dist.] 2005, pet. denied) (declining to reach challenge that was not raised in appellant's opening brief).

In this case, the Three Intervening Owners assume that an easement may

---

**7.** Although the Owners in this appeal have waived any challenge to the legal doctrine allowing a rolling easement, we observe that the Supreme Court of Texas heard oral arguments whether an easement may roll to land when the line of vegetation moves to land not originally part of the easement. *See Severance v. Patterson,* No. 09–0387. *Severance* is a certified question from the United States Fifth Circuit Court of Appeals that asks whether Texas recognizes a rolling public beachfront access easement; if so, whether the rolling easement is derived from common law doctrines or from a construction of the Open Beaches Act; and whether a landowner would be entitled to receive compensation for limitations on the use of his property affected by the landward migration of a rolling ease-ment onto property on which no public easement has been found. *See Severance v. Patterson,* 566 F.3d 490, 503–04 (5th Cir.2009). Two of the *Severance* certified questions, which ask whether an easement may roll and whether that rolling of the easement is premised on the Open Beaches Act or common law, are not pertinent to this appeal because the Three Intervening Owners have not made that argument in this case, and any challenge on those grounds is, therefore, waived. *See* Tex.R. Civ. P. 166a(c); *Rayl v. Borger Econ. Dev. Corp.,* 963 S.W.2d 109, 114 (Tex.App.-Amarillo 1998, no pet); *see also Malcomson Rd. Util. Dist. v. Newsom,* 171 S.W.3d 257, 279 (Tex.App.-Houston [1st Dist.] 2005, pet. denied).

properly roll when the line of vegetation moves. The only arguments presented by the Three Intervening Owners concerning the rolling easement are that (A) the houses cannot be considered an encroachment under the Open Beaches Act when the line of vegetation was originally seaward of the houses, and (B) the houses should remain on the easement because the purpose of the easement to use the beach can be met even if the houses remain at their location.

## A. Houses Are An Encroachment Under the Open Beaches Act

■■■ The Three Intervening Owners contend their houses cannot be an "encroachment" on the public beach under the Open Beaches Act due to the facts that the houses are stationary and the rolling easement moved landward to the houses. They assert this is a matter of first impression.

### 1. Law Concerning Construction of Statute

Statutory construction is a legal question that we review de novo. *HCBeck, Ltd. v. Rice,* 284 S.W.3d 349, 352 (Tex.2009). In construing a statute, we must "ascertain and give effect to the Legislature's intent." *Id.* We begin with the "plain and common meaning of the statute's words" to ascertain the Legislature's intent. *Id.* (citing *Tex. Dep't of Transp. v. City of Sunset Valley,* 146 S.W.3d 637, 642 (Tex.2004)). "We also consider the objective the Legislature sought to achieve through the statute, as well as the consequences of a particular construction." *Id.* (citing TEX. GOV'T CODE ANN. § 311.023(1), (5) (Vernon 2005)). The Government Code provides the following criteria to consider when interpreting a statute:

 (a) object sought to be attained;

 (b) circumstances under which the statute was enacted;

 (c) legislative history;

 (d) common law or former statutory provisions, including laws on the same or similar subjects;

 (e) consequences of a particular construction;

 (f) administrative construction of the statute; and

 (g) title (caption), preamble, and emergency provision.

TEX. GOV'T CODE ANN. § 311.023.

### 2. Analysis of Statute

Under the Act, a public beach includes the "area extending from the line of mean low tide to the line of vegetation ... if the public has acquired a right of use or easement to or over an area by prescription, dedication, or has retained a right by virtue of continuous right in the public." TEX. NAT. RES.CODE ANN. § 61.012 (Vernon 2001). For the purposes of this issue, the Three Intervening Owners concede the public has acquired an easement or right of use to the line of vegetation.

The Three Intervening Owners argument focuses solely upon the word "encroachment." The Three Intervening Owners assert that the common definitions for the word "encroachment" indicate that the Act's authority to enjoin encroachments on the public easement targets the active introduction of a structure onto an existing public easement area. For example, the Three Intervening Owners cite the definition. of "encroach" in Black's Law Dictionary. *See* BLACK'S LAW DICTIONARY 607 (9th ed. 2009) (defining "encroach" as "To enter by gradual steps or stealth into the possessions or rights of another; to trespass or intrude"). The Three Intervening Owners contend that by using the word "encroachment," the Legislature intended the Act to apply only to the active introduction of a new "improvement, main-

tenance, obstruction, barrier, or other encroachment on a public beach."

The plain language of the statute contradicts this position. The Act gives the attorney general the power to file a suit "to remove or prevent any improvement, maintenance, obstruction, barrier, or other encroachment on a public beach." Tex. Nat. Res.Code Ann. § 61.018(a). The Act provides "any" improvement, maintenance, barrier, obstruction or other encroachment is subject to removal. *Id.* The Act also provides a county attorney, a district attorney, or the attorney general shall file a suit "to prohibit *any* unlawful restraint on the public's right of . . . use of a public beach." *Id.* (emphasis added). The plain language of the Act, therefore, requires the removal of obstructions, barriers, and encroachments whether or not they existed when the easement first applied to the property.

In examining a statute, in addition to the plain language, we consider the seven criteria in the Government Code listed above.

### a. The Objective of the Legislature

The Act provides, "The commissioner shall strictly and vigorously enforce the prohibition against encroachments on and interferences with the public beach easement." Tex. Nat. Res.Code Ann. § 61.011(c) (Vernon Supp. 2009). As noted below, the caption refers to "affirming and protecting" the rights of the public to use the public beach easement. The object sought to be attained, as expressed in the language and the caption of the Act, is the public's right to use the public beach easement.

### b. The Circumstances Under Which Act Was Enacted

The Open Beaches Act was passed in response to the Texas Supreme Court's decision in *Luttes v. State,* 159 Tex. 500, 324 S.W.2d 167 (1958), to protect the public's rights of access to and use of public beaches. *See* Tex. Nat. Res.Code Ann. § 61.011(a) (stating policy of Act). In *Luttes,* the supreme court held that the common-law boundary line between State-owned submerged lands and privately owned property on the beach is the "mean higher high tide line" under Spanish or Mexican law grants, and the "mean high tide" under Anglo–American law. *Luttes,* 324 S.W.2d at 191–93; *Feinman,* 717 S.W.2d at 110. *Luttes* confirmed State ownership of the "wet beach"—the area between the mean low and mean high tide lines. *See Luttes,* 324 S.W.2d at 191–93; *see also Feinman,* 717 S.W.2d at 110. "The division between public and private ownership under the common law, which governs Texas grants after 1840, is the mean high tide line." *Feinman,* 717 S.W.2d at 110 (citing *Luttes,* 324 S.W.2d at 191–93). The "dry beach," or the area from either the mean higher high tide line or the mean high tide line to the line of vegetation, belongs to the private property owners. *See Luttes,* 324 S.W.2d at 191–93. However, prior to *Luttes,* it was thought that the State owned *both* the wet and dry beaches. Neal Pirkle, *Maintaining Public Access to Texas Coastal Beaches the Past and the Future,* 46 Baylor L. Rev. 1093, 1093–94 (1994). The circumstances under which the Open Beaches Act was enacted show that it was passed to protect the public's rights of access to and use of public beaches when title to the land belongs to private owners.

### c. The Legislative History

We note again that the Open Beaches Act was passed in response to the Texas Supreme Court's decision in *Luttes,* to protect the public's rights of access to and use of public beaches. *See* Tex. Nat. Res.Code Ann. § 61.011(a) (stating policy of the Act).

### d. Common-law or Former Statutory Provisions

As we explain in more detail below, the application of the common law pertaining to easements results in the conclusion that the houses here must be removed from the easement.

### e. Consequences of a Particular Construction

The Owners' interpretation of the Act would defeat the purpose expressed in the plain language of the Act and, as noted below, in the caption. If the State could not protect the right of the public when an easement rolled to existing structures, the public would soon lose the right to access the beach because forces of nature continually change the shoreline. *See Feinman,* 717 S.W.2d at 111 (noting that if boundaries and easement did not "roll" with changes to shoreline, it "would greatly diminish the public's easement" and "defeat the purposes of the Act").

### f. Administrative Construction of the Act

The General Land Office has adopted a rule "to provide authority for local governments to issue permits or certificates for repairs to certain houses if any portion of the house is located seaward of the boundary of the public beach." 31 TEX. ADMIN. CODE § 15.11(a) (2006) (Gen. Land Office, Coastal Area Planning). A house is eligible for such a permit if, among other requirements, "[t]he line of vegetation establishing the boundary of the public beach has moved as a result of erosion or a meteorological event," and "[t]he house was located landward of the natural line of vegetation before the erosion or meteorological event occurred." *Id.* § 15.11(c)(1), (2). The rule does not expressly state existing improvements are subject to removal. However, this follows from the language of the rule. To be eligible for repairs, the house must have been landward of the vegetation line until a meteorological event moved the vegetation line. *Id.* If rolling of the vegetation line and the easement's boundary does not apply to existing homes, the General Land Office would have no reason to adopt such a rule.

### g. The Caption

The caption for the Open Beaches Act states, in pertinent part,

An Act affirming and protecting the right of the public use of certain state-owned beaches or such larger area extending from the line of mean low tide to the line of vegetation, in the event the public has acquired a right of use or easement to or over such area by prescription, dedication, or has retained a right by virtue of a continuous right in the public bordering on the seaward shore of the Gulf of Mexico; affirming and protecting rights of the public to beaches upon which the public has acquired a prescriptive right....

Act of July 16, 1959, 56th Leg., 2nd C.S., ch. 19, 1959 Tex. Gen. Laws 108. The caption mentions "protecting" the public's right of use of the easement.

 In summary, our analysis of the Act and the matters pertinent to determining the Legislature's intent leads to the conclusion that the Act applies to anything that interferes with the public's right to use the easement. This is so whether an owner of a property actively introduces an "improvement, maintenance, obstruction, barrier, or other encroachment" on to a public beach or whether the easement rolls to a portion of the property that had before not been located on the easement. We hold that the Open Beaches Act requires that the Three Intervening Owners' houses be removed from the easement.

## B. Houses Impede Public's Use of Easement Under Common Law

The Three Intervening Owners contend their houses cannot be removed by the State because they can co-exist with the purpose of the easement under the common law. They assert the public, as holder of the beach easement, may make use of the land for beach recreational purposes because the elevated houses do not substantially interfere with the public's use of the beach for access and recreation. In this section of our analysis, we do not consider the Open Beaches Act's definition of "public beach" that refers to the word "encroachment," but instead focus solely on what the common law requirements for an easement are. Because the Three Intervening Owners did not challenge the matter of whether an easement may roll, we have assumed that the easement may roll under both the Open Beaches Act and the common law, as previously held by several intermediate court decisions. *See Feinman,* 717 S.W.2d at 110–11; *Arrington,* 38 S.W.3d at 766; *Matcha,* 711 S.W.2d at 100.

■■■■ An easement does not convey title to property. *Stephen F. Austin State Univ. v. Flynn,* 228 S.W.3d 653, 658 (Tex. 2007). Under Texas property law concerning easements, the owners of land subject to an easement remain the title holders of the land. *See Brownlow v. State,* 251 S.W.3d 756, 760–61 (Tex.App.-Houston [14th Dist.] 2008, pet. filed) (fee owner who grants easement retains title to land) (citing *Brunson v. State,* 418 S.W.2d 504, 506 (Tex.1967)). An easement is a non-possessory property interest that authorizes its holder to use the property of another for a particular purpose. *Id.* (citing *Marcus Cable Assoc. v. Krohn,* 90 S.W.3d 697, 700 (Tex.2002)). The user of the easement is the dominant estate owner and the land burdened by the easement is the servient estate. *See Drye v. Eagle Rock Ranch, Inc.,* 364 S.W.2d 196, 207 (Tex.1963). "The owner of the servient estate [the land owner] simply may not interfere with the right of the owner of the dominant estate [the user of the easement] to use the servient estate for the purpose of the easement." *Vrazel v. Skrabanek,* 725 S.W.2d 709, 711 (Tex.1987) (quoting *Drye,* 364 S.W.2d at 207); *see also Voice of Cornerstone Church Corp. v. Pizza Prop. Partners,* 160 S.W.3d 657, 666 (Tex.App.-Austin 2005, no pet.); *Taylor Foundry Co. v. Wichita Falls Grain Co.,* 51 S.W.3d 766, 770 (Tex.App.-Fort Worth 2001, no pet.) ("Any use by the servient estate holder that interferes with the exercise of the dominant estate holder's rights must yield."). "A grant or reservation of an easement in general terms implies a grant of unlimited reasonable use such as is reasonably necessary and convenient and as little burdensome as possible to the servient owner." *Coleman v. Forister,* 514 S.W.2d 899, 903 (Tex.1974). "At common law, a fee owner may not interfere with an easement holder's reasonable use and enjoyment of the easement." *Still v. Eastman Chem. Co.,* 170 S.W.3d 851, 854–55 (Tex.App.-Texarkana 2005, no pet.).

Courts must examine the scope of the easement to determine whether the purpose sought is within that scope. *See Krohn v. Marcus Cable Associates, L.P.,* 43 S.W.3d 577, 581 (Tex.App.-Waco 2001), *aff'd,* 90 S.W.3d 697 (Tex.2002) ("To so construe the statute [to allow a use outside the scope of the easement] would be to burden the servient estates to an extent greater than the original grant. This added burden would constitute a taking . . ."); *see also McCammon & Lang Lumber Co. v. Trinity & B.V. Ry. Co.,* 104 Tex. 8, 133 S.W. 247, 249 (1911) (dedication of land for street does not authorize use of street for purposes of commercial railroads without

further compensation); *Tex. Parks and Wildlife Dep't v. Callaway,* 971 S.W.2d 145, 150–51 (Tex.App.-Austin 1998, no pet.) (takings claims stated by allegation that government expanded scope of existing easement in opening up private property to public boating). The beach easement takes from the owner only those rights which are essential and necessary to the public's enjoyment of its easement. *See Lakeside Launches, Inc. v. Austin Yacht Club, Inc.,* 750 S.W.2d 868, 871 (Tex.App.-Austin 1988) (limiting impact of easement on burdened land to specifically allowed, affirmative right to access).

 The undisputed evidence shows the public used the land seaward of the vegetation line for recreation, such as swimming and beach combing, and for passage, using it as a road until Village ordinances prohibited driving on that section of beach. Under the law concerning easements, therefore, the Three Intervening Owners may not interfere with the public's right to use the easement for the purposes of recreation, such as swimming and beach combing, and for passage. *See Vrazel,* 725 S.W.2d at 711. Although they cite to the 1999 Attorney General letter declaring that the houses did not significantly block beach access after migration of the vegetation line to the landward side, this letter was issued before the bull tide and Hurricane Ike struck Surfside Beach. Furthermore, as described above, the easement at Pedestrian Beach was for vehicular travel until the road was closed to vehicles, and then the easement was for pedestrian travel, access, and use of the land between the mean low tide and the line of vegetation. Evidence shows that the houses that remain at Pedestrian Beach cause the public to be unable to use the land between the mean low tide line and the line of vegetation, particularly at high tide. For example, according to Hamby's affidavit, "Pres-

ently there are times when, especially at high tide, there is no dry beach seaward of the houses, even for pedestrian beachgoers, much less for the use of emergency and service vehicles operated by the Village." Pickett's affidavit observes that "[n]ow the dry beach at this location— formerly obstruction free and fully available for public travel and recreation—is situated underneath numerous private houses . . . . This situation has shrunk the amount of useable beach seaward of Beach Drive." The evidence conclusively establishes that the area from the line of mean low tide to the line of vegetation, which had formerly been an unobstructed roadway for vehicles and pedestrian travel, cannot now be used for unobstructed pedestrian travel or emergency vehicles. Although the public can access the easement in the pockets of land underneath and between the houses for beach activities such as swimming, this access is unlike and inferior to the access historically given to the public at Surfside Beach, which included use as an unobstructed road for travel, and complete, unobstructed access to the approximately mile-and-a-half stretch of beach at Pedestrian Beach for pedestrian travel, beach combing, swimming, and other beach-related activities. We hold that under the common law the houses must be removed from the easement. *See Vrazel,* 725 S.W.2d at 711; *see also Still,* 170 S.W.3d at 854–55; *Taylor Foundry Co.,* 51 S.W.3d at 770.

**C. Reason for Addressing Rolling Easement Under Open Beaches Act and Common Law**

We have addressed the Three Intervening Owners' challenges that reference the Open Beaches Act and common law. As noted above, the Open Beaches Act gives the attorney general the power to file a suit "to remove or prevent any improvement, maintenance, obstruction, barrier, or

other encroachment on a public beach." TEX. NAT. RES.CODE ANN. § 61.018(a) (Vernon 2001). But, also as shown above, this is phrased differently from the common law easement requirement that the scope of the easement be limited to what is essential and necessary to the public's enjoyment of its easement. *See Lakeside Launches, Inc.*, 750 S.W.2d at 871. Although the two vary in their phrasing, the Open Beaches Act appears to codify the Legislature's assessment that an unobstructed beach is essential and necessary to the public's enjoyment of its use of the beach easement. We need not determine whether this will always be the case in every beach easement litigation because, here, as explained above, the record shows the houses interfere with the public's right to use the easement in violation of both the Open Beaches Act and common law.

We overrule the Three Intervening Owners' first issue.

### Enforcement of Easement is Not A Taking

 In their second and fourth issues, the Owners challenge the trial court's rulings concerning their takings claims. Specifically, the Owners assert claims for regulatory takings based on the premise that the State and Village deprived them of the use of their properties by denying access to and utilities for the properties for the period of time starting when the actions of the State and Village deprived them of the use of their properties until the time either when their houses were destroyed by the force of nature or their houses will be destroyed due to the trial court's injunction. The Three Intervening Owners challenge the trial court's refusal to award damages for the physical taking of their houses due to the trial court's injunction ordering the removal of their houses.[8]

### A. Applicable Law Concerning Taking of Property

 The Texas Constitution provides, "No person's property shall be taken, damaged or destroyed for or applied to public use without adequate compensation being made, unless by the consent of such person...." TEX. CONST. art. I, § 17. To prevail on a takings claim, "the landowner must show that (1) the State intentionally performed certain acts in the exercise of its lawful authority (2) that resulted in a 'taking' of property (3) for public use." *Villarreal v. Harris County*, 226 S.W.3d 537, 542 (Tex.App.-Houston [1st Dist.] 2006, no pet.). A compensable "regulatory

---

**8.** We note that this issue is similar to the third certified question in *Severance*, currently before the Supreme Court of Texas, asking whether a landowner would be entitled to receive compensation for limitations on the use of his property affected by the landward migration of a rolling easement onto property. *See Severance*, 566 F.3d at 503–04. The United States Fifth Circuit Court of Appeals asks in *Severance* if there is a taking if the rolling easement is founded solely on the Open Beaches Act or solely on common law. *See id.* at 502–03 ("The Texas Supreme Court might conclude that ... any significant shift in the rolling easement's boundary due to a natural shoreline movement must be accompanied by compensation of the landowner; or ... [that] Texas recognizes a rolling easement and its enforcement as provided in the OBA, but no landowner compensation is required."). Although the Supreme Court of Texas' decision in *Severance* would likely be helpful in our resolution of the second and fourth issues in this appeal, the Three Intervening Owners ask that we not delay our decision in this case because 11 of the 14 Owners have lost their houses due to the force of nature, and delay in the legal resolution of this case could cause the three remaining houses to also fall for that reason, which would make the injunction portion of the appeal moot. We, therefore, proceed with resolution of this appeal, while recognizing that a similar question is currently before the Texas Supreme Court.

taking" occurs "where regulation denies all economically beneficial or productive use of land." *Sheffield Dev. Co., Inc. v. City of Glenn Heights*, 140 S.W.3d 660, 671 (Tex. 2004) (quoting *Lucas v. S.C. Coastal Council*, 505 U.S. 1003, 1017–19, 112 S.Ct. 2886, 2893, 120 L.Ed.2d 798 (1992)). "A physical taking may occur when the government physically appropriates or invades private property, or unreasonably interferes with the landowner's right to use and enjoy it." *Porretto v. Patterson*, 251 S.W.3d 701, 707 (Tex.App.-Houston [1st Dist.] 2007, no pet.) (citing *Tarrant Reg'l Water Dist. v. Gragg*, 151 S.W.3d 546, 554 (Tex.2004)).

"Although the Texas constitution's adequate compensation provision is worded differently than the just compensation clause of the Fifth Amendment to the United States Constitution, the Texas Supreme Court has described them as comparable and generally looks to federal cases for guidance in takings cases." *City of Sherman v. Wayne*, 266 S.W.3d 34, 42–43 (Tex.App.-Dallas 2008, no pet.) (citing *Sheffield*, 140 S.W.3d at 669).

There is a difference between a taking and a limitation upon property use based upon "background principles" of state property law. *Lucas*, 505 U.S. at 1030, 112 S.Ct. at 2901. The Supreme Court held Lucas would not be entitled to damages if the State of South Carolina could "identify background principles of . . . property law that prohibit the uses [Lucas] now intends in the circumstances in which the property is presently found." *Id.* at 1031, 112 S.Ct. at 2901–02. The Supreme Court explained, "Where the State seeks to sustain regulation that deprives land of all economically beneficial use, we think it may resist compensation only if the logically antecedent inquiry into the nature of the owner's estate shows that the proscribed use interests were not part of his title to begin with." *Id.* at 1027, 112 S.Ct. at 2899.

The Supreme Court went on to note, "[W]e have refused to allow the government to decree it [a taking] anew (without compensation), no matter how weighty the asserted 'public interests' involved—though we assuredly *would* permit the government to assert a permanent easement that was a pre-existing limitation upon the land owner's title." *Id.* at 1028–29, 112 S.Ct. at 2900 (emphasis in original, internal citation omitted). Similarly, the Austin court explains that there is a "fundamental distinction between a governmental taking of an easement through an act of sovereignty and judicial recognition of a common law easement acquired through historical public use." *Arrington*, 767 S.W.2d at 958.

This Court, the Austin court of appeals, and the Corpus Christi court of appeals have rejected claims that the Open Beaches Act results in a taking of private property without just compensation. *See Arrington*, 767 S.W.2d at 959 (holding trial court properly denied damages based on claim that property was taken under Open Beaches Act); *Moody*, 593 S.W.2d at 379–80 (following *Seaway* in holding Open Beaches Act is not taking of property without compensation because public acquired right to use beach and right was not taken by State); *Seaway*, 375 S.W.2d at 930 (holding Open Beaches Act does not take rights from owner of land because rights to easement that are being enforced are acquired by reason of dedication, prescription, or continuous right); *Matcha*, 711 S.W.2d at 101 (overruling takings claim because "the public acquired the complained-of-easement not by virtue of the Open Beaches Act, but instead through prescription, dedication, and custom").

**B. Analysis**

In the preceding portions of this opinion, we have already determined that

- the Open Beaches Act protects the public's free and unrestricted right

to *use* the larger area extending from the line of mean low tide to the line of vegetation if the public acquires that right through prescription, dedication, or custom;

- in this appeal, it is undisputed that under the common law and the Open Beaches Act the easement "rolls" or moves with the shifting of the line of mean low tide and the line of vegetation;

- the evidence conclusively shows that there is an easement by implied dedication on these properties because the public has historically used the beach in the area where these properties are located;

- the Open Beaches Act requires the removal of the houses because it applies to anything that interferes with the public's right to use the easement, which occurred here when the easement rolled to the houses; and

- common law requires the removal of the houses because their presence interferes with the use historically given to the public at Pedestrian Beach, which included its use as an unobstructed road for travel, swimming, beach combing, and other beach related activities.

These points show that we have already determined that, because the easement rolled to the houses, the houses that sit on the easement now interfere with the public's use of the easement—the area extending from the line of mean low tide to the line of vegetation—that was historically dedicated for the public's use.

The specific question we answer today, which has not previously been addressed by this Court or another court of appeals of this State, is whether a taking occurs when an easement rolls to a house that was not initially on the easement. Although this specific question is a matter of

first impression, Texas courts of appeals have consistently held that removal of a structure or obstruction from the public easement under the Open Beaches Act is not a taking because the Act does not create an easement, but provides a method of enforcing an easement acquired by other means. *See Seaway,* 375 S.W.2d at 930; *see also Arrington,* 767 S.W.2d at 958; *Moody,* 593 S.W.2d at 379–80. The only difference between those cases and this case is that here this Court is asked to specifically address the situation where the easement rolled to houses that were not initially on the easement. But that difference does not compel a different result because the pertinent inquiry focuses on whether the area extending from the line of mean low tide to the line of vegetation was historically dedicated for the public's use. If the area extending from the line of mean low tide to the line of vegetation was historically dedicated for the public's use, as here, then that land is subject to the easement because of the historical dedication. There is no taking of that land by the government because it was the force of nature that placed these houses on the area extending from the line of mean low tide to the line of vegetation, which was the property that was historically dedicated for the public's use. *See Seaway,* 375 S.W.2d at 930; *see also Arrington,* 767 S.W.2d at 958; *Moody,* 593 S.W.2d at 379–80. We hold the easement that rolled to the houses located on these properties does not constitute a taking, either under common law or under the Open Beaches Act because the public's easement was established by dedication under the common law. *See Seaway,* 375 S.W.2d at 930; *see also Arrington,* 767 S.W.2d at 958; *Moody,* 593 S.W.2d at 379–80. This restriction on the Three Intervening Owners' use of their property is part of the background principles of Texas law and, there-

fore, does not constitute a taking under *Lucas*. *See Lucas*, 505 U.S. at 1028–29, 112 S.Ct. at 2900 (stating enforcement of existing easement is not new taking entitled to compensation).

We agree with the Austin court of appeals that *Nollan v. California Coastal Commission* is distinguishable. As the Austin court explains,

> Appellants claim *Nollan v. California Coastal Commission*, 483 U.S. 825, 107 S.Ct. 3141, 97 L.Ed.2d 677 (1987), establishes that the judgment in this case is an unconstitutional taking. The Nollans were refused a permit to build a new house on their beachfront property in California unless they granted an easement to the public on the land between the historic mean high tide mark which bounded their property and their seawall. The United States Supreme Court found that this scheme constituted a taking and ordered that the Nollans be compensated. The California Coastal Commission sought to establish an easement across land belonging to the Nollans in exchange for the permit where no easement had previously existed, unlike the present case, where the court merely enforced an already existing public easement established by custom, prescription, or public dedication.

*Arrington*, 767 S.W.2d at 958.

The bottom line here is that the easement applies to the Owners' land seaward of the vegetation line because that land was historically dedicated for the public's use. Although the Three Intervening Owners' houses were not initially part of this easement due to the fact that their houses were landward of the vegetation line, the force of nature has caused their houses to become part of this easement now that their houses are seaward of the vegetation line. This is not a governmental taking because the government did not create the easement that exists seaward of the vegetation line; rather, the historical dedication of the land seaward of the vegetation line created the easement. The act of nature moved the line of vegetation landward of where the houses were located; this was not the act of the government. By enforcing the easement, the government is not taking the Owners' property but instead enforcing the easement on the land seaward of the vegetation line that was historically dedicated to the public.

We conclude the enforcement of the public's existing easement is not a taking of property without just compensation under the common law and under the Open Beaches Act, which here acts as a codification of the common law. We hold the trial court properly denied the Owners' claims for damages based on the claim that the State and Village deprived them of all use of their property by denying access to and utilities for the property. We also hold the Three Intervening Owners are not entitled to damages for the removal of their houses.

We overrule the second and fourth issues.

### Conclusion

We deny the Owners' motion for rehearing. We dismiss the appeal for lack of jurisdiction for all of the claims concerning the injunction to remove houses and claims for damages from any removal of those houses for the 11 Owners whose houses have been removed from the easement by the force of nature. Except for those claims, we affirm the judgment of the trial court. All other pending motions are denied as moot.